The STATE ex rel. CINCINNATI ENQUIRER, DIVISION OF GANNETT
SATELLITE INFORMATION NETWORK, INC.

v.

SHARP et al.

[Cite as *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info.
Network, Inc. v. Sharp*, 151 Ohio App.3d 756, 2003-Ohio-1186.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020327.

Decided March 14, 2003.

Graydon, Head & Ritchey, John C. Greiner and John A. Flanagan, for relator.

Squire, Sanders & Dempsey, L.L.P., Pierre H. Bergeron and Mark J. Ruehlmann; and Gonzalez, Saggio & Harlan, L.L.P., and John J. Williams, for respondent Tim Sharp.

Michael K. Allen, Hamilton County Prosecuting Attorney, David T. Stevenson and Stephen K. Shaw, Assistant Prosecuting Attorneys, for respondent David Krings.

MARK P. PAINTER, Judge.

{¶ 1} The relator, *The Cincinnati Enquirer*, filed this original action for a writ of mandamus to compel the respondents, Tim Sharp, President of the Port of Greater Cincinnati Development Authority, and David Krings, the Administrator of Hamilton County, to give *The Enquirer* access to certain documents concerning business plans for the Banks Redevelopment Project. Because we conclude that the documents in question are exempt from disclosure under the public records law—the information has never *become* a public record—we deny the writ.

## I. One Meeting

{¶ 2} The parties have stipulated the record in this case. In early 2002, an employer began negotiating with the Port Authority regarding the location, preservation, or expansion of its business within Hamilton County. The business and the Port Authority signed a confidentiality agreement specifically designed to invoke the protections of R.C. 4582.58. That statute protects financial and proprietary information submitted by an employer to a port authority from disclosure as a public record. Believing its confidentiality protected by the agreement and the statute, the business provided information to the Port Authority.

{¶ 3} At a meeting in March 2002, the Port Authority shared some of the information provided by the business with senior staff personnel of Hamilton County. The county staff did not make copies of the documents and returned the documents to the Port Authority at the end of the meeting. About a week later, Dan Klepal, a reporter at *The Enquirer*, requested that the Port Authority produce the documents. The Port Authority declined Klepal's request, leading to the filing of this action.

## II. Not Public Record

{¶ 4} The parties disagree on whether the information falls within the scope of R.C. 4582.58(B), which states, "Financial and proprietary information, including trade secrets, submitted by or on behalf of an employer to a port authority or to a nonprofit corporation engaged by contract to provide economic development services for a port authority, in connection with the relocation, location, expansion, improvement, or preservation of the business of that employer is not a public record subject to section 149.43 of the Revised Code. Any other information submitted by such an employer under those circumstances is not a public record subject to section 149.43 of the Revised Code until that employer

commits in writing to proceed with the relocation, location, expansion, improvement, or preservation."

{¶ 5} Sharp and Krings argue that, under R.C. 4582.58(B), the information the business gave to the Port Authority is specifically exempted from Ohio's public records law, which mandates that all public records be made available for inspection to any person upon proper request.[1] They contend that the business submitted the information to the Port Authority in connection with the relocation, location, expansion, improvement, and preservation of its business, and that nothing has been committed in writing to proceed with such actions yet. As a result, the information has never become a public record and is not subject to disclosure under R.C. 149.43.

{¶ 6} We agree with Sharp and Krings that R.C. 4582.58(B) applies and that the documents are not public records. The General Assembly added R.C. 4582.58(B) recently, in 2000, to specifically shield information submitted to a port authority from the public records law. It is to be liberally construed to effect its purpose.[2]

{¶ 7} The General Assembly deliberately carved out an exception to the public records law to protect the confidentiality of employers considering bringing businesses and jobs to Ohio. The legislature recognized that, if the information immediately became public, businesses would be hesitant to cooperate with port authorities. The legislature obviously believed that release of this sensitive information would have a chilling effect upon the willingness of businesses even to discuss locating in Ohio.

{¶ 8} The stipulated facts state that the business submitted information to the Port Authority concerning the relocation, location, expansion, improvement, and preservation of the business. Under the plain language of R.C. 4582.58(B), it is clear that the documents are temporarily exempted from release under the public records law.

### III. No Waiver

{¶ 9} *The Enquirer* agrees that R.C. 4582.58(B) initially provided an exemption from the public records law. But *The Enquirer* argues that once the county received the records in its meeting with the Port Authority, the exemption no longer applied. They argue that the character of the documents changed, from records submitted to a port authority to records submitted to a county.

---

1. R.C. 149.43(B)(1).

2. R.C. 4582.59.

Relying on *State ex rel. The Cincinnati Enquirer v. Dinkelacker,*[3] *The Enquirer* contends that when the records were submitted to the county, R.C. 4582.58(B) no longer exclusively applied, and the information became a public record.

{¶ 10}  *The Enquirer* in essence argues that the Port Authority waived its right to invoke the exemption of R.C. 4582.58(B) when it shared the documents with the county.  While a party can waive the protections of an exemption from the public records law, numerous cases indicate that waivers should be narrowly construed.

{¶ 11}  In *State ex rel. Zuern v. Leis,*[4] the Ohio Supreme Court held that "[v]oluntary disclosure can preclude later claims that records are exempt from release as public records."  In *Zuern,* the court concluded that the "respondents, by the prior voluntary disclosure of this material in the * * * civil litigation, waived any claim of exemption under R.C. 149.43."[5]

{¶ 12}  But the Ohio Supreme Court has narrowly defined when a waiver exists.  That court has stressed that waiver does not occur if the records at issue have not been shared with the public.  "Exemptions are usually fully applicable absent evidence that the public office having custody of the records disclosed the records to the public."[6]

{¶ 13}  That court has also emphasized that the statutory time period that documents are exempt from disclosure is to be strictly followed.  For example, the court has held that "[o]nce a record becomes exempt from release as a 'trial preparation record,' that record does not lose its exempt status unless and until all 'trials,' 'actions,' and/or 'proceedings' have been fully completed."[7]  The court warned that if it ruled otherwise, "then there is a very real probability that certain information will remain unrecorded, witnesses' names will not be catalogued and other memoranda will be absent from the 'official' files.  We should not, by our rulings, create a situation where there is an incentive to engage in such conduct."[8]

---

3.  (2001), 144 Ohio App.3d 725, 761 N.E.2d 656.

4.  (1990), 56 Ohio St.3d 20, 22, 564 N.E.2d 81.

5.  Id.

6.  See *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 265, 685 N.E.2d 1223; see, also, *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365.

7.  See *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph four of the syllabus.

8.  Id. at 434, 639 N.E.2d 83.

{¶ 14} Federal courts that have considered the analogous Freedom of Information Act ("FOIA")[9] have similarly concluded that waivers of the exemptions from public release of documents can exist but should be narrowly construed. Courts have held that an agency may waive the FOIA exemptions "through voluntary, authorized release of the material to a nongovernmental recipient."[10] But the courts have held that "agencies lose FOIA exemptions only when they officially release information or when the exact information is otherwise in the public domain."[11] Federal courts have also emphasized that a waiver does not necessarily occur when the public office that possesses the information makes limited disclosures to carry out its business. The United States Court of Appeals for the Fifth Circuit has stated, "[I]t is the law of this circuit that such limited disclosures to proper outside persons as are necessary to carry out effectively a purpose for assembling a governmental report in the first place do not waive its privilege."[12]

{¶ 15} In this case, the Port Authority did not waive the exemption under R.C. 4582.58(B). The information has never been disclosed to the public. The Port Authority revealed the information not to the public, but only to county officials in one meeting. In addition, the Port Authority tried to prevent any disclosure to the public by taking the documents back from the county officials at the end of the meeting. This was not a "subterfuge," as *The Enquirer* would have us believe; we think the Port Authority acted prudently.

### IV. Different From the Dinkelacker Case

{¶ 16} Therefore, *The Enquirer's* reliance on *State ex rel. The Cincinnati Enquirer v. Dinkelacker*[13] is misplaced. In *Dinkelacker,* the documents at issue were originally exempt from the public records law as pretrial discovery material. We held, though, that the documents changed character when they were introduced in court as exhibits for a motion hearing. Because they were then part of the court record, the documents became subject to release under the public records law.[14] Here, however, the documents have never entered the public domain. Absent any evidence that the records were disclosed to the public, the exemption still applies, and there has been no waiver.

---

9. Section 552, Title 5, U.S.Code.

10. See *Virginia Beach v. United States Dept. of Commerce* (C.A.4, 1993), 995 F.2d 1247, 1253.

11. See *Students Against Genocide v. Dept. of State* (D.D.C.1999), 50 F.Supp.2d 20, 25.

12. See *Cooper v. Dept. of Navy* (C.A.5, 1979), 594 F.2d 484, 485.

13. (2001), 144 Ohio App.3d 725, 761 N.E.2d 656.

14. Id. at 729, 761 N.E.2d 656.

{¶ 17} The General Assembly has anticipated that cooperation will be required between a port authority and other governmental entities.[15] When the Port Authority shared the documents with the county, it was to further the economic development plan of the business. The Port Authority limited disclosure to the county. This sharing, which was necessary to further the Port Authority's work, is not a waiver of the exemption. Forcing disclosure of any information that the Port Authority shares with other public entities could hinder future cooperation between the Port Authority and those entities. This is contrary to the purpose of R.C. 4582.58(B), which is intended to allow the Port Authority to carry out its work while protected from forced disclosure of sensitive information.

{¶ 18} In addition, the time period of the exemption granted in R.C. 4582.58(B) is to be considered ongoing until the business commits in writing to proceed with the business plans. The parties here agree that there has not yet been a written commitment.

### V.   No Writ

{¶ 19} To be entitled to a writ of mandamus, the relator must establish that it possesses a clear legal right to the relief sought, that respondent has a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law.[16] Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43.[17] Because it is the appropriate remedy, a person requesting records under the Public Records Act need not establish the lack of an adequate legal remedy in order to be entitled to a writ.[18]

{¶ 20} The Enquirer has failed to prove either that it has a clear legal right to the documents or that Sharp and Krings have a clear legal duty to release them. Therefore, we deny The Enquirer's request for a writ of mandamus. We also deny The Enquirer's request for attorney fees.

Writ denied.

HILDEBRANDT and WINKLER, JJ., concur.

---

15.   R.C. 4582.431(A).

16.   See State ex rel. Seikbert v. Wilkinson (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128.

17.   See State ex rel. Cincinnati Enquirer v. Krings (2001), 93 Ohio St.3d 654, 657, 758 N.E.2d 1135.

18.   See State ex rel. Steckman v. Jackson, supra, at 426, 639 N.E.2d 83.