2003 OK 65

CITIZENS AGAINST TAXPAYER ABUSE, INC., an Oklahoma Not-for-Profit Corporation, Petitioner/Appellant,

v.

The CITY OF OKLAHOMA CITY, Oklahoma, a municipal corporation, et al., Respondents/Appellees.

No. 98,641.

Supreme Court of Oklahoma.

June 24, 2003.

Peter B. Bradford, Shelia M. Darling, Conner & Winters, P.C., Oklahoma City, Oklahoma, for petitioner/appellant, Citizens Against Taxpayer Abuse, Inc.

William R. Burkett, Municipal Counselor, Diane Lewis, Deputy Municipal Counselor, Kenneth D. Jordan, Assistant Municipal Counselor, Oklahoma City, Oklahoma, for respondents/appellees, The City of Oklahoma City, Oklahoma, a municipal corporation, et al.

BOUDREAU, Justice.

¶ 1 Petitioner, Citizens Against Taxpayer Abuse, Inc., appeals the district court's order granting the City of Oklahoma City's motion for summary judgment. Petitioner timely filed a petition in error and motion to retain. We granted petitioner's motion to retain the appeal in this Court on January 23, 2003. We affirm the trial court's order granting summary judgment in favor of the City of Oklahoma City.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 On March 12, 2002, the law firm of Conner & Winters, P.C., on behalf of certain taxpayers and other citizens, submitted a written request to the City of Oklahoma City (City) under the provisions of the Oklahoma Open Records Act (Act), 51 O.S.2001, §§ 24A.1 et seq. The firm requested permission to inspect and copy all documents pertaining to a proposed lease of City property to Bass Pro Shops (Bass Pro). The City complied with the request in part but refused to release Bass Pro's financial documents. The City claimed the documents were used

solely to determine Bass Pro's credit worthiness, were not "records" under the Act and accordingly were exempt from disclosure.

¶ 3 On March 26, 2002, Citizens Against Taxpayer Abuse, Inc. (CATA), a nonprofit corporation, filed a petition for declaratory judgment and writ of mandamus alleging the documents withheld by the City were subject to disclosure under the Act. In the petition, CATA maintained that even if the City initially examined Bass Pro's financial documents to determine credit worthiness, City officials subsequently used the documents or information contained therein for a political purpose to gain support for the project by arguing it made financial sense to spend $17,000,000 in taxpayer funds. CATA contended the City's actions went beyond the Act's credit evaluation exemption and accordingly the documents were "records" subject to disclosure under the Act. CATA also maintained that the City cannot rely on a confidentiality agreement signed by a city official prior to review of Bass Pro's financial documents to alter the Act's requirement of disclosure of public records.

¶ 4 The City answered that CATA did not have standing to object to the City's response to the Open Records request because CATA did not make the request at issue.[1] In addition, the City contended that the documents were exempt from disclosure under the Act because the documents were used solely to determine Bass Pro's credit worthiness. The City also maintained that it had not waived the credit evaluation exemption. While it acknowledged that city officials had made statements concerning the economic viability of the project, the City contended the statements were based on information included in a revenue analysis of the proposed project prepared for the City by the consulting firm of Peckham Guyton Albers & Viets (PGAV) and not on information secured from Bass Pro's financial documents. The City maintained that all information contained in Bass Pro's financial documents has remained confidential and has not been reviewed by any city employee other than Catherine O'Con-

---

1. The City asserts CATA was not formed until March 20, 2002, approximately eight (8) days    after the Open Records request at issue was made.

nor, the City's Finance Director and Assistant City Manager, and attorneys in the municipal counselor's office. While the City admits that its finance director and its independent auditor, Price Waterhouse Cooper, signed confidentiality agreements prior to reviewing Bass Pro's financial documents, the City argued that it never relied upon the agreements in withholding the documents at issue.

¶ 5 Both parties moved for summary judgment. The district judge, after *in camera* review of Bass Pro's financial documents, denied CATA's motion for summary judgment and granted the City's motion for summary judgment. The trial court held the Act expressly protects Bass Pro's financial documents because the documents were submitted to and reviewed by the City for the purpose of evaluating Bass Pro's credit worthiness. The court held there was no evidence the City abandoned or waived the credit worthiness exemption. Finally, the court determined the City fully complied with the provisions of the Open Records Act. CATA timely appealed and we granted CATA's motion to retain the appeal in this Court.

## II. STANDARD OF REVIEW

¶ 6 Whether summary judgment was properly entered is a question of law which we review *de novo*. *Manley v. Brown*, 1999 OK 79, ¶ 22, 989 P.2d 448, 455. In a *de novo* review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. We view the facts and all reasonable inferences arising therefrom in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. CATA has Standing to Tender the Issues Under Consideration.

¶ 7 The City challenges CATA's standing to pursue this action. Standing refers to the legal rights of a person to challenge the conduct of another in a judicial forum. *Hendrick v. Walters*, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1236 (footnote omitted). A party whose standing is challenged must show (1) actual or threatened injury, (2) for which relief can be given, and (3) the interest to be protected is "within a statutorily or constitutionally protected zone". *Id.* at 1236–37; *In re Initiative Petition No. 363*, 1996 OK 122, ¶ 13 n. 29, 927 P.2d 558, 565 n. 29. These interests must not only be "direct, immediate and substantial", but the litigant must also have a personal stake in the outcome. *Hendrick*, 865 P.2d at 1237; *Brandon v. Ashworth*, 1998 OK 20, ¶ 6, 955 P.2d 233, 235. In standing issues, the question is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the controversy. *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, ¶ 7, 652 P.2d 271, 274 (footnotes omitted). The doctrine of standing ensures a party has a personal stake in the outcome of a case and that the parties are truly adverse. *See Hendrick*, 865 P.2d at 1237.

¶ 8 The Open Records Act provides that "any person denied access to a record of a public body or public official may bring a civil suit for declaratory and/or injunctive relief". 51 O.S.2001, § 24A.17(B). According to the record, two attorneys from the law firm of Conner & Winters submitted the request at issue on behalf of certain taxpayers and other citizens. CATA's certificate of incorporation reveals that the two attorneys who submitted the records request are listed as CATA's incorporators, along with one other person. Further, Conner & Winters represented CATA at the trial level and in this appeal.

¶ 9 We conclude there is a sufficient connection between Conner & Winters and CATA as it relates to the Open Records request to support CATA's standing to pursue this appeal. Although CATA was not legally formed until after the request at issue

was made, two of its three incorporators tendered the request which the City denied. Accordingly, CATA can be said to be substantially aggrieved by the City's refusal to disclose the documents at issue.

¶ 10 The purpose of a standing requirement is to ensure courts address actual controversies between parties who have sufficient adverse interests. This case has been litigated intensely at both the trial level and on appeal, and there is no danger this Court will be misled by the failure of the parties to adequately explore and argue the issues. Accordingly, we find CATA has a sufficient stake in the outcome of this case to prosecute the appeal. We now turn to CATA's contentions on appeal.

**B. The Summary Judgment Record Demonstrates the City's Actions Did Not Amount to a Waiver of the Applicable Exemption Under the Open Records Act.**

¶ 11 The Oklahoma Legislature enacted the Open Records Act, 51 O.S.2001, §§ 24A.1 *et seq.*, in 1985.[2] This Act provides that "all records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours." 51 O.S.2001, § 24A.5. "Record" is defined as all documents, regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property. 51 O.S.2001, § 24A.3(1).

¶ 12 The purpose of the Act is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power. 51 O.S. 2001, § 24A.2. Each public body subject to the Act is responsible for making records available to the public. 51 O.S.2001, § 24A.5(5). Unless a record falls within a statutorily prescribed exemption in the Act,

the record must be made available for public inspection. The public body urging an exemption has the burden to establish the applicability of such exemption. *See Merrill v. Oklahoma Tax Comm'n,* 1992 OK 53, ¶ 8, 831 P.2d 634, 641.

¶ 13 The Act exempts certain information and documents from the definition of the word "record". *See* 51 O.S.2001, § 24A.3. Section 24A.3(1) provides that "record" does not include "personal financial information, credit reports or other financial data obtained by or submitted to a public body for the purpose of evaluating credit worthiness, obtaining a license, permit, or for the purpose of becoming qualified to contract with a public body." The City relied upon this exemption to avoid disclosure of the financial documents at issue.

¶ 14 In its summary judgment motion, the City maintained it examined and used Bass Pro's financial documents solely to determine whether Bass Pro was financially able to perform the terms of its proposed lease agreement with the City, i.e., its credit worthiness. In its response, CATA acknowledged that the City initially reviewed Bass Pro's financial documents to evaluate Bass Pro's credit worthiness. However, CATA asserted that the uncontroverted facts establish the City subsequently waived the credit worthiness exemption by using the documents to publicly support its position that the Bass Pro project be implemented, a purpose other than what the exemption is limited to.

¶ 15 The City, as the moving party, had the initial burden of showing that there is no substantial controversy as to any material fact on the issue of waiver. *Bowers v. Wimberly,* 1997 OK 24, ¶ 14, 933 P.2d 312, 315. To that end, the City submitted the affidavit of Catherine O'Connor, the City's Finance Director and the City official who received and reviewed Bass Pro's financial documents. In the affidavit she stated she used the financial data for the exclusive purpose of evaluating Bass Pro's credit worthiness. *She stated that she did not disclose the financial documents or the data contained in the documents to anyone at anytime other than her*

**2.** 1985 Okla.Sess.Laws, ch. 355, created the Oklahoma Open Records Act.

*attorneys in the municipal counselor's office for the sole purpose of defending the City in this action.*[3]

¶ 16 Once the City made the required showing of the moving party, CATA assumed the burden of demonstrating the existence of a material fact that would justify a trial on the issue. *Bowers,* 933 P.2d at 315. To establish the existence of a disputed material fact on the issue of waiver, CATA submitted five (5) statements made by public officials which, according to CATA, referenced or relied upon Bass Pro's financial documents. An examination of these statements reveals that CATA has failed to establish the existence of a material fact on the issue of whether the City subsequently waived the credit worthiness exemption.

¶ 17 CATA offered the following statement allegedly made by the City Manager: "[b]ased upon the financial information that he reviewed, but did not disclose", he concluded:

1. "the sales estimates of the Oklahoma City Bass Pro ... are reasonable";

2. "the analysis of trade area and distances traveled by customers ... are reasonable";

3. "Bass Pro, Inc. has the financial resources to meet or exceed the lease and sales expectations in Oklahoma City"; and

4. "[The City Manager] did not see any indication based upon the data reviewed that the City Council should not continue its consideration of the Bass Pro Shops proposal".

A review of the record reveals that these statements were not made by the City Manager, but were made by Catherine O'Connor in a memorandum to the City Manager. In addition, when Catherine O'Connor's statements are reviewed in full (that is, with the conveniently placed ellipses removed), it is clear that her conclusions in this statement refer to the PGAV report. Catherine O'Connor's memorandum actually stated that "the

sales estimates for the Oklahoma City Bass Pro *Shops included in the Revenue and Economic Impact Analysis Report by PGAV are* reasonable" and "the analysis of trade area and distances traveled by customers *included in the Revenue and Economic Impact Analysis Report by PGAV* are reasonable". (emphasis added) These statements fail to contradict Catherine O'Connor's affidavit and actually support the City's position that city officials relied upon the PGAV report to support other statements.

¶ 18 CATA points to two statements by the City Manager, one declaring that "we stand by PGAV's report, because of what we've done to verify those numbers" and another "that the Bass Pro project was beneficial economically because it would strengthen the City's sales taxes and even soften future budget cuts". It is clear from the context of these statements that the City Manager was promoting the reliability of the PGAV report prepared by an independent consultant. The statements reveal no specific information about the financial data contained in Bass Pro's financial documents.

¶ 19 CATA directs this Court to two other statements, one in which the "Mayor argued to the public that the Bass Pro project made economic sense and would generate $5 in tax revenues for every dollar spent in incentives" and another in which Catherine O'Connor stated at a City Council meeting "that the project would generate $24.6 million in direct revenue and $129.9 million in indirect revenues over the 20 year lease period". Both of these statements are opinions of public officials in the form of an economic forecast of future revenues expected to be derived from the project. Neither statement reveals any specific information about the financial data contained in Bass Pro's financial documents. Finally, both statements were made by public officials who had access to the PGAV report.

¶ 20 Waiver is defined as a voluntary relinquishment of a known right. *Faulkenberry*

3. In their brief-in-chief, CATA mentions under the Summary of Record that the trial court entered a protection order that prevented them from taking the deposition of Catherine O'Connor. If this can be considered an argument for

reversal of summary judgment, it is not supported by legal authority and is deemed abandoned. *See Hadnot v. Shaw,* 1992 OK 21, ¶ 2, 826 P.2d 978, 981; *Wetsel v. Independent Sch. District I–1,* 1983 OK 85, ¶ 8, 670 P.2d 986, 991.

*v. Kansas City S. Ry. Co.*, 1979 OK 142, ¶ 6, 602 P.2d 203, 206–07. This Court has not yet addressed when a waiver occurs under the Act. Other state jurisdictions which have addressed the issue have narrowly construed when waivers of exemptions occur under its own public records laws. *See e.g., Rackauckas v. Superior Court of Orange County*, 104 Cal.App.4th 169, 128 Cal.Rptr.2d 234, 240 (2002)(exemptions are not waived by interagency disclosures made in confidence); *An Unincorporated Operating Div. of Indiana Newspapers, Inc. v. The Trustees of Indiana Univ.*, 787 N.E.2d 893, 2003 WL 2010385 (Ind.App. May 2, 2003)(university's release of a summary report and sanctions documents relating to a disciplined coach did not result in waiver of exemption; documents did not quote integral and extensive portions of the records and only contained a overview of the findings of the investigation, the trustees' conclusions, and the president's decision); *State ex rel. Cincinnati Enquirer v. Sharp*, 151 Ohio App.3d 756, 785 N.E.2d 822, (1 Dist. 2003)(exemptions are fully applicable lacking evidence the public office disclosed the records to the public).

¶ 21 Federal courts that have considered the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552, *et seq.*, have similarly concluded that waivers of exemptions from public release of documents can exist, but should be narrowly construed.[4] *See e.g., Simmons v. United States Dept. of Justice*, 796 F.2d 709, 712 (4th Cir.1986)(exemption remains intact if there has been less than full disclosure of the information from an official source); *Afshar v. Department of State*, 702 F.2d 1125, 1130–1132 (D.C.Cir.1983)(any showing by the public agency that the information sought is different from the information disclosed to the public defeats the waiver claim); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.C.1980)(exemption continues to be applicable unless material is formally or informally adopted as the agen-

cy's position or used by the agency in its dealings with the public); *Murphy v. Department of Army*, 613 F.2d 1151, 1155–57 (D.C.C.1979)(release of documents to a congressional committee did not constitute waiver of exempt status where the documents were not disclosed to the public and where an expectation of confidentiality could be assumed from the nature of the documents).

¶ 22 The trial judge held a hearing in which he examined the parties motions for summary judgment, heard oral arguments, and conducted an *in camera* review of Bass Pro's financial documents.[5] He subsequently entered judgment for the City on its motion for summary judgment and denied CATA's motion for summary judgment. In the journal entry, he found that the summary judgment record is devoid of anything "to suggest an abandonment or waiver by the Respondent City of the exemption provided by 51 O.S.2001, § 24A.3(1), for financial data obtained by or submitted to a public body for the purpose of evaluating credit worthiness." We agree. Waivers of exemption of public records can exist, but should be narrowly construed. In this instance, there was no release of the documents to the public. An examination of each statement offered by CATA reveals that the statements did not quote any portion of the financial documents, contained no specific information regarding the financial data and did not summarize the information contained in the documents. Rather the statements related to the PGAV report or they were merely the expressions of opinions of public officials. A public body does not waive an exemption merely by relying on the financial information contained in the documents in some fashion. Such a construction would unjustifiably constrain the public body in the exercise of its official duties. CATA has failed to meet its burden of demonstrating the existence of a material fact that would justify a trial on the issue of

---

4. We find federal precedent concerning Freedom of Information Act proceedings to be persuasive. *See Tulsa Tribune Co. v. Oklahoma Horse Racing Comm'n*, 1986 OK 24, ¶ 23 n. 15, 735 P.2d 548, 555 n. 15, superseded by statute on other grounds, *see State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision v. Migliaccio*, 1996 OK CIV APP 37, 917 P.2d 483.

5. The financial documents at issue were not included in the record on appeal. The appellant bears the burden of presenting the court with a record to support the issues raised. *Smith v. The Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 27, 50 P.3d 1132, 1144.

whether the City waived the credit worthiness exemption. Accordingly, we affirm the trial court's order granting summary judgment to the City.

### C. The Summary Judgment Record Contains No Evidence that the City Relied Upon the Confidentiality Agreement to Support Its Decision to Withhold the Documents at Issue.

¶ 23 CATA also alleged the City refused to disclose Bass Pro's financial documents because of a confidentiality agreement it signed with Bass Pro. The City maintained, however, that it never relied upon the confidentiality agreement to support its decision to withhold the documents at issue. In fact, the City concedes a confidentiality agreement cannot change the statutory requirements of disclosure of public records imposed upon a public body under the Act and that any basis for withholding a public record must be found in the statute.

¶ 24 The City's summary judgment motion established that Bass Pro's financial documents are exempt from disclosure by virtue of the credit worthiness exemption. The City had a clear legal basis for withholding the documents under the statute. CATA's summary judgment motion does not establish that the City relied on something other than this exemption when it withheld the documents at issue. As long as the City had an adequate basis under the statute to withhold Bass Pro's financial documents, it is entitled to summary judgment. Accordingly, we affirm the trial court's order granting summary judgment to the City.

### IV. CONCLUSION

¶ 25 CATA has standing to tender the issues under consideration because there is a sufficient connection between Conner & Winters and CATA as it relates to the Open Records request at issue. In addition, it is undisputed in the summary judgment record that the City reviewed Bass Pro's financial documents to evaluate Bass Pro's credit wor-

thiness. The record does not demonstrate that the City's actions amounted to a waiver of the applicable exemption under the Open Records Act.[6] Finally, the record does not demonstrate that the City relied upon the confidentiality agreement to support its decision to withhold the requested documents. Accordingly, we affirm the trial court's order granting summary judgment to the City.

### SUMMARY JUDGMENT AFFIRMED.

WATT, C.J., OPALA, V.C.J., and HODGES, LAVENDER, KAUGER, SUMMERS, and WINCHESTER, JJ., concur.

HARGRAVE, J., concurs in result.

---

6. In view of our holding that the City did not waive the credit worthiness exemption under the Open Records Act, we need not pass on the

absence of Bass Pro, a party, who under 12 O.S.2001, § 2019, appears to be necessary for an effective adjudication of its interest in privacy.