2004 OK 36

The ESTATE OF Ilar HICKS, Deceased, by and through its Personal Representative, Rickie Dean SUMMERS, Petitioner,

v.

URBAN EAST, INC., d/b/a Edwards Redeemer Nursing Center, an Oklahoma corporation, Respondent.

No. 99,432.

Supreme Court of Oklahoma.

May 25, 2004.

Thomas J. Steece, Robert T. Kincaid III, Michael L. Velez, Oklahoma Legal Services, P.L.L.C., Oklahoma City, OK, for petitioner.

Inona Jane Harness, Michael J. Heron, Roe T. Simmons, Haven Tobias, Pierce Couch Hendrickson Baysinger & Green, L.L.P., for respondent.

HARGRAVE, J.

¶ 1 Petitioner (plaintiff) sued Respondent (defendant) for wrongful death of plaintiff's decedent under several theories of recovery.[1] Plaintiff alleged injuries and damages sustained as a result of the wrongful death of Ilar Hicks that were caused as a result of the acts, conduct and/or omissions of the defendant. The petition alleges that Ilar Hicks died as a result of sepsis, with a secondary condition of cardiac failure. Plaintiff alleges that the death is a direct result of the negligent acts, conduct and/or omissions to act, including negligent supervision and/or care and/or abuse by the defendant. Plaintiff states that Ilar Hicks was admitted to the nursing center on or about March 22, 1994,

1. Plaintiff refers in the petition and briefs to "defendants" in the plural. Defendant points out that there is only one defendant.

and that she left the nursing center on May 23, 1998, as a result of the alleged negligent actions. Ilar Hicks transferred to another nursing facility where she died on May 26, 1998.

¶ 2 Plaintiff pled causes of action under the Nursing Home Care Act, 63 O.S. § 1–1900.1 et seq., the Consumer Protection Act, 15 O.S. § 751, et seq., common law negligence and breach of contract. Plaintiff also seeks an award of punitive damages. Defendant moved to dismiss the claims brought under the Consumer Protection Act and for breach of contract, asserting that the contract claim was derivative of the underlying tort claim authorized by the Nursing Home Care Act and that the regulation of nursing homes does not fall within the scope of Oklahoma's Consumer Protection Act, and specifically falls within an exemption to the Consumer Protection Act. The trial judge dismissed the two claims and certified the matter for immediate interlocutory appeal under 12 O.S.2001 § 952(b)(3). We granted the petition to review the certified interlocutory order. Plaintiff filed a motion for oral argument. The motion for oral argument is denied.

¶ 3 The trial judge in this case ruled that:

a) The Act creates a statutory tort for private residents to redress violations of the rights conferred by the Act. As such, an action by residents or individuals entitled to bring private actions to redress the rights conferred by the Act sound in tort, not contract. Therefore, Defendant's Motion to Dismiss Plaintiff's breach of contract claim/cause of action is Sustained.

b) The Oklahoma State Department of Health, through the Oklahoma Nursing Home Care Act regulates the operation and licensing of nursing homes in the State of Oklahoma. As such, the provisions of the Nursing Home Care Act supercede the Oklahoma Consumer Protection Act. Accordingly, plaintiff has no remedy under the provisions of the Oklahoma Consumer Protection Act and Defendant's Motion to Dismiss Plaintiff's Consumer Protection Act claim/cause of action is Sustained.

¶ 4 The trial judge certified her rulings for interlocutory order to this Court to determine whether the trial court was correct to dismiss plaintiff's claim against a nursing home for breach of contract and whether the trial court was correct to dismiss plaintiff's Consumer Protection Act claim. The case is before us to review the trial court's rulings on a motion to dismiss, not on a motion for summary judgment. Our review is limited to the questions presented as a result of the trial court's ruling on the motion to dismiss: these are the only proper issues to be determined in this Court by our order granting certiorari.

¶ 5 A trial court's dismissal of an action for failure to state a claim is reviewed *de novo*. *Lockhart v. Loosen*, 1997 OK 103 ¶ 4, 943 P.2d 1074. The function of a motion to dismiss is to test the law of the claims, not the facts supporting them. *Zaharias v. Gammill*, 1992 OK 149, 844 P.2d 137, 138. In assessing the sufficiency of a petition, the general rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. *Id.* The question, on a motion to dismiss, is whether, taking all of plaintiff's allegations as true, she is precluded from recovering as a matter of law. *Patel v. OMH Medical Center, Inc.,* 1999 OK 33 ¶ 43, 987 P.2d 1185, 1202, reh. den., cert. den. 528 U.S. 1188, 120 S.Ct. 1242, 146 L.Ed.2d 100. The appropriate question in testing the sufficiency of the allegations in the complaint which is subject to a motion to dismiss is whether relief is possible under any set of facts that could be established consistent with the allegations. *Boren v. Thompson & Associates,* 2000 OK 3 ¶ 25, 999 P.2d 438, 447.

## CONTRACT CLAIM

¶ 6 The district court determined that the Nursing Home Care Act created a statutory tort and that therefore all claims brought thereunder sound exclusively in tort. For that reason, the trial court determined that plaintiff's breach of contract claim must fail. The question is whether the Nursing Home Care Act is plaintiff's exclusive remedy for the breaches alleged.

¶ 7 The Nursing Home Care Act appears at 63 O.S.2001 § 1–1900.1 et seq.[2] The Act covers, among other things, the licensing and regulation of nursing homes. Section 1–1918 sets out the rights and responsibilities of nursing homes, and provides for remedies and penalties for violations. The section is referred to as the "Nursing Home Patients' Bill of Rights." Subsection (G) of Section 1–1918 provides that an action may be brought against an individual by any resident who is injured by any violation of the section. If damages are alleged and proved the plaintiff is entitled to recover the actual damages sustained by the plaintiff, and punitive damages may be assessed if it is proved that the defendant's conduct was willful or in reckless disregard of the rights provided by the section.[3]

¶ 8 In *Morgan v. Galilean Health Enterprises, Inc.*, 1998 OK 130, 977 P.2d 357, this Court interpreted § 1–1918 as creating a statutory tort, with a private right of action for nursing home residents or their guardians to redress a violation of rights conferred by the Act. The issue was whether the victorious plaintiff was entitled to attorney fees allowed to a prevailing party under the Nursing Home Care Act. Galilean argued that the suit was tried as a common law negligence action and not as a claim for breach of duties imposed by the Nursing Home Care Act, and that, accordingly, the attorney fees allowed under the Nursing Home Care Act were not available to the plaintiff. We disagreed, on the ground that regardless of whatever the theory of plaintiff's lawsuit may have been at its inception, the jury verdict rested upon an instruction that incorporated the provisions of the Nursing Home Care Act.

¶ 9 The instruction in question in *Galilean* charged the jury that in addition to the duty to exercise ordinary care, there were also duties imposed by statutes. We said that in that instruction, the court charged that apart from the common-law duties owed to the resident, Galilean was also bound by certain statutory obligations. The action was submitted to the triers of fact not solely as a common law tort, but also as a breach of duties imposed by the Nursing Home Care Act. Because the parties settled the underlying judgment in that case, we could not, on appeal, look at the evidence to determine whether that instruction was warranted *based on plaintiff's evidence.*

¶ 10 We did not decide, in *Galilean*, that the statutory tort was a plaintiff's exclusive remedy. The defendant in *Galilean* had argued that no private right of action in tort was created by the Nursing Home Care Act, but rather that the Act only authorized private actions for injunctive or preventive relief. In rejecting that argument, we looked to subsection (F) of 63 O.S. Supp.1992 § 1–1918 and determined that it created a statutory tort. We said that the so-called Nursing Home Patients' Bill of Rights shapes the standard of care to govern in the nursing home setting and that a nursing home operator's breach of any enumerated duty gives rise to a private right of action under the Act. 977 P.2d at 361.

¶ 11 *Galilean* dealt with § 1–1918 of the Act. In addition to the remedies provided in section 1–1918, however, the Nursing Home Care Act specifically provides that the plaintiff may seek any recovery permitted by law.

---

**2.** Portions of the act have been amended. See 63 O.S. Supp.2003 § 1–1903 et seq. Subsection (G) of § 1–1918, discussed below, now appears as subsection (F).

**3.** Section 1–1918(G) provides:
"In addition to the penalties provided in this section, an action may be brought against an individual by any resident who is injured by any violation of this section, or who shall suffer injury from any person whose threats would cause a violation of this section if carried through, may maintain an action to prevent, restrain or enjoin a violation or threatened violation. If a violation or threatened

violation of this section shall be established in any action, the court shall enjoin and restrain or otherwise prohibit the violation or threatened violation and assess in favor of the plaintiff and against the defendant the cost of the suit, and reasonable attorney fees incurred by the plaintiff. If damages are alleged and proved in the action, the plaintiff shall be entitled to recover from the defendant the actual damages sustained by the plaintiff. If it is proved in an action that the defendant's conduct was willful or in reckless disregard of the rights provided by this section, punitive damages may be assessed."

Section 1–1939 of the Act provides, in pertinent part:

> § 1–1939. "Liability to residents—Injunctive and declaratory relief-Damages—Waiver of rights—Jury trial-Retaliation against residents-Immunity—Report of abuse or neglect."
>
> A. The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident. . . .
>
> B. A resident may maintain an action under this act *for any other type of relief,* including injunctive and declaratory relief, *permitted by law.*
>
> C. Any damages recoverable under this section, including minimum damages as provided by the section, may be recovered in any action which a court may authorize to be brought as a class action. *The remedies provided in this section, are in addition to and cumulative with any other legal remedies available to a resident. Exhaustion of any available administrative remedies shall not be required prior to commencement of suit hereunder.* (emphasis added).

¶ 12 Section 1–1939 provides that a resident may maintain an action under the act for any other type of relief permitted by law. It also provides that the remedies in the section are *in addition to and cumulative with* any other legal remedies available to a resident. This section clearly reflects the intent of the legislature that the Nursing Home Care Act was not intended to be a resident's exclusive remedy.

¶ 13 In *Rogers v. Meiser,* 2003 OK 6, 68 P.3d 967, considering a similar question under the Residential Property Condition Disclosure Act, we held that the Residential Property Condition Disclosure Act (RPCDA) did not abrogate a common law actual fraud claim. In that case the trial court had dismissed the fraud claim, finding that the RPCDA had abrogated any theories of liability not arising under or permitted by the RPCDA. We reversed, finding that the RPCDA neither expressly, nor by necessary implication, abrogated rights previously existing at common law. In the case at bar, the Nursing Home Care Act specifically provides that a resident is entitled to pursue other legal remedies that he or she may have.

¶ 14 In *Finnell v. Jebco Seismic,* 2003 OK 35, 67 P.3d 339, 344, this Court held that an action for breach of contract and an action in tort may arise from the same set of facts and that a person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both. Where a contract is the mere inducement creating the state of things that furnishes the occasion for a tort, the tort, not the contract is the basis of the action. This is so, we said, because there is inherent in every contract a common-law duty to perform its obligations with care, skill, reasonable experience and faithfulness. A person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both, but even if the evidence supports both, the claimant can achieve but a single recovery. 67 P.3d at 344.

¶ 15 In *Finnell* we said that the court will craft the available relief that is justified by the facts. We stated that notice pleading requires of the petition only that it give fair notice of the plaintiff's claim and the grounds upon which it rests. This regime abolishes any requirement that a litigant correctly identify a theory of recovery or describe the remedy affordable for vindication of asserted rights. Title 12 O.S.2001 § 2008(A) directs a party to set forth a short and plain statement of the claim consisting of simple, concise and direct averments showing that the pleader is entitled to relief. Section 2008(E)(2) provides that a party may set forth, and at trial rely on, two or more statements of a claim alternately or hypothetically, either in one count or in separate counts. A party may also state as many separate claims as he has, regardless of consistency and whether based on legal or equitable grounds. Title 12 O.S. 2001 § 2009 sets out the requirements for pleading special matters, including capacity, fraud, mistake, condition of the mind, conditions precedent, and special damages, among other things.

¶ 16 We do not have the contract before us in the case at bar—it is not included in the record. Defendant states in its brief that no contract was presented to the trial court. It appears from plaintiff's brief that there may not be a contract between plaintiff's decedent and the defendant, but that there was a contract between Medicare/Medicaid and the defendant to which plaintiff claims third-party beneficiary status. Plaintiff argues that when state or federal funds are received, a "global contract" between the nursing home and the government agency providing the funds governs the relationship, in lieu of an individual contract, and that such a contract forms the basis of the Plaintiff's breach of contract claim. Plaintiff states that plaintiff's decedent was receiving federal Medicare/Medicaid funds and was a third-party beneficiary to the contract between the defendant and the federal government. Plaintiff's brief asserts that a contract "either written or oral" provides the basis for the breach of contract and tort claims.

¶ 17 Accordingly, it remains for determination in the trial court whether there is a contract, what the terms of the contract are, whether plaintiff's decedent was a third-party beneficiary to the contract, and whether plaintiff is able to prove a claim for breach of contract under the facts of this case. At this pleading stage of the proceeding we cannot find that plaintiff has failed *as a matter of law* to state a claim for breach of contract.[4] As we said in *Zaharias v. Gammill,* 1992 OK 149, 844 P.2d 137, 141:

> "Based upon the allegations made in his petition, it appears that Zaharias *could perhaps prove* a set of facts which would entitle him to relief under an intentional infliction of emotional distress theory. Therefore, the trial court erred in dismissing Zaharias's intentional infliction of emotional distress cause of action for failure to state a claim upon which relief can be granted."

¶ 18 We said in *Finnell, supra,* at p. 344 that a person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both, but can achieve but a single recovery, even if the evidence supports both. We find that the trial court erred in dismissing plaintiff's contract claim at this stage of the proceedings. Whether plaintiff's claim will stand supported by the evidence remains to be determined.

## CONSUMER PROTECTION ACT CLAIM

¶ 19 Plaintiff's third cause of action asserts a claim for violation of Oklahoma's Consumer Protection Act. The plaintiff realleged the preceding paragraphs of·the petition, and further alleged that defendant·or its employees solicited plaintiff with "false, fraudulent and misleading representations and/or assurances and/or promises which are contrary to and in violation of Oklahoma's Consumer Protection Act, 15 O.S. § 751 et seq."

¶ 20 Plaintiff further pled that, as a direct result of the false, fraudulent and misleading solicitation of the defendant or its employees by representing the degree and standard of care and treatment that could and/or would be provided to plaintiff, plaintiff has sustained damages in a sum in excess of ten thousand dollars.

¶ 21 Defendant moved to dismiss plaintiff's claim on the grounds that the regulation of nursing homes does not fall within the scope of Oklahoma's Consumer Protection Act, and specifically falls within the exemption from the Consumer Protection Act found at 15 O.S. § 754 for "actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States . . ." The trial judge granted the motion to dismiss, finding that the Oklahoma State Department of Health, through the Oklahoma Nursing Home Care Act regulates the operation and licensing of nursing homes in the State of Oklahoma and that therefore the provisions of the Nursing Home Care Act supercede the Oklahoma Consumer Protection Act.

---

4. As a result, we need not address plaintiff's constitutional challenges.

¶ 22 Oklahoma's Consumer Protection Act is codified at 15 O.S.2001 § 751 et seq.[5] The Act applies to consumer transactions, which are defined as: the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property . . . or any other article, commodity, or thing of value wherever located, for purposes that are personal, household or business oriented. 15 O.S. § 752(2).

¶ 23 The list of unlawful practices under the Consumer Protection Act is set out at 15 O.S. § 753. This section provides that a person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person, among other practices listed:

5) Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status affiliation or connection of a person therewith.

8) Advertises, knowingly or with reason to know, that the subject of a consumer transaction with intent not to sell it as advertised.

20) Commits an unfair or deceptive trade practice as defined in Section 752 of this title;

¶ 24 Section 752 defines an unfair or deceptive trade practice:

11) Deceptive trade practice means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

12) Unfair trade practice means any practice which offends established public policy or if the practice is immoral, unethi-

cal, oppressive, unscrupulous or substantially injurious to consumers.

¶ 25 The Consumer Protection Act exempts transactions regulated under laws administered by any regulatory body acting under statutory authority of the state or United States. The exemptions are set forth in § 754:

§ 754. Exemptions
Nothing in this act shall apply to:
* * *

2. Actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter.

¶ 26 The listed exemption applies to "actions or transactions" that are regulated under laws administered by any regulatory body acting under statutory authority of this State. Plaintiff has pled that due to the false, fraudulent and misleading solicitations of the defendant representing the degree and standard of care and treatment that would be provided, plaintiff was injured.

¶ 27 The Nursing Home Care Act, in section 1–1900.1(A), enacted by Laws.2001 c. 428 § 1, provides that the act shall be known and may be cited as the "Long–Term Care Reform and Accountability Act of 2001."[6] Section 1–1900.1(B) states that the purpose of the Act is to design, develop and implement policies and procedures that improve the quality of care provided in this state's long-care delivery system for the elderly and disabled. 63 O.S.2001 § 1–1900.1(B).

¶ 28 The Nursing Home Care Act contains extensive provisions for regulation of the nursing home industry. The Act sets out the procedure for licensing and certification of nursing homes, as well as penalties for violations. Section 1–1906 provides that a li-

5. The Act was amended by Laws 2002, c. 296 § 3, eff. Nov. 1, 2002; Laws 2003, c. 61 § 2, eff. Nov. 1, 2003.

6. Section 1–1901 provides that the Act shall be known and may be cited as the "Nursing Home Care Act." For consistency, we refer to the act as the Nursing Home Care Act.

cense may be denied, suspended or revoked for the reasons listed therein. Section 1–1908 requires compliance with other current licensing requirements and requires that the building be of fire-resistant construction and approved by the Department of Health and the State Fire Marshal. Section 1–1911 provides that every licensed establishment shall be periodically inspected by a representative of the Oklahoma Department of Health, pursuant to rules promulgated by the State Board of Health with the advice and counsel of the Long–Term Care Facility Advisory Board created by section 1–1923 of the Act.

¶ 29 Under the Act, notice must be given of a violation, and the right to a hearing is provided. The Department of Health may take remedial action, impose administrative penalties, place a monitor or temporary manager in the facility, issue a conditional license or suspend or revoke a license, upon notice to the licensee. Section 1–1912. Section 1–1916 sets out a list of prohibited acts and makes violation of the section a misdemeanor. Section 1–1916.1 establishes penalties for violations of the Act. Section 1–1918 sets out the rights and responsibilities under the Act and provides for penalties and a private right of action.

¶ 30 Section 1–1921 sets out the provisions to be included in the resident's contract with the nursing home. Section 1–1922 requires each facility to establish a residents' advisory council that communicates to the administrator the opinions and concerns of the residents in addition to reviewing procedures for implementing residents' rights and facilities responsibilities. Section 1–1925 sets out minimum standards for facilities that shall be prescribed by the Oklahoma Department of Health and submitted to the Legislature. These standards regulate the location and construction of the facility, number and qualifications of all personnel, sanitary conditions, diet, equipment and a program of rehabilitation for residents.

¶ 31 Section 1–1929 instructs the Oklahoma Department of Health to develop rules and regulations for the transfer of residents initiated by the Department in emergency situations. Section 1–1939 sets out liabilities of the owner and licensee to residents, and provides for injunctive and declaratory relief, as well as damages. Section 1–1950.1 provides for criminal arrest checks on certain persons offered employment by the employer.

¶ 32 The "action or transaction" in the case at bar involves the services and level of care alleged to have been wrongfully represented to plaintiff's decedent. As such, the action or transaction is regulated under laws administered by the Oklahoma Department of Health, as mandated by the Nursing Home Care Act. This places the action or transaction squarely within the exemption to the Oklahoma Consumer Protection Act found at § 754(2).

¶ 33 This Court previously has found, in *Galilean, supra,* that the purpose of the Act was to provide better quality care for residents of nursing homes. The Nursing Home Care Act is a statutory scheme that sets out the duties of the Department of Health, regulation of the nursing home industry, the services to be provided residents, and it provides remedies and penalties for breaches of the Act. We find that the plaintiff's claim under the Consumer Protection Act must fail because the provision of care and medical services by nursing homes is regulated under laws administered by the Oklahoma Department of Health under the Nursing Home Care Act, and as such falls within the exemption to the Consumer Protection Act described at 15 O.S.2001 § 754(2). The trial court did not err in dismissing plaintiff's claim asserted under the Oklahoma Consumer Protection Act.

TRIAL COURT'S ORDER AFFIRMED IN PART, REVERSED IN PART; CAUSE REMANDED FOR FURTHER PROCEEDINGS.

¶ 34 **ALL JUSTICES CONCUR.**