2009 OK CIV APP 85

**INTERNATIONAL UNION OF POLICE ASSOCIATIONS, Local No. 24, and Tommy Harrell, Plaintiffs/Appellants,**

**v.**

**CITY OF LAWTON, Defendant/Appellee.**

**No. 106,231.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 13, 2009.

Certiorari Denied Sept. 21, 2009.

Douglas D. Vernier, Moore & Vernier, P.C., Oklahoma City, Oklahoma, for Appellants.

Frank V. Jensen, Deputy City Attorney, Kelea L. Fisher, Assistant City Attorney, Lawton, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Plaintiffs/Appellants International Union of Police Associations, Local No. 24, and Tommy Harrell (collectively, Union) seek review of the trial court's order granting the motion to dismiss of Defendant/Appellee City of Lawton (City) in Union's action for a declaratory judgment to determine its right, under the Oklahoma Open Records Act (ORA), 51 O.S. §§ 24A.1, et seq., to inspect the preliminary draft of an audit report. In this appeal, Union challenges the trial court's order as affected by errors of both fact and law.

¶ 2 Union is the collective bargaining agent for City's police officers [1] under the Fire and Police Arbitration Act, 11 O.S. §§ 51–101, et seq., and Union demanded arbitration for the next fiscal year. On or about April 16, 2008, Union requested City's production of City's "Audit Report" for the fiscal year 2006–2007, and "[a]ny other financial reports or documents used by [City] to make financial and budget decisions."

¶ 3 At the time, City had not received the final draft of the Audit Report from its independent auditor, and refused to produce the unsigned draft of the Audit Report in its possession. At the arbitration hearing on May 19 and 20, 2008, City introduced, then withdrew, exhibits containing financial information derived from the "FY 06–07 draft audit." On May 27, 2008, Union commenced the instant action, seeking a declaration of its right to inspect the draft Audit Report under the ORA.

¶ 4 City filed a motion to dismiss. City first asserted Union "made a written request for the discovery of financial documents, not a request to inspect and copy records . . . as authorized by the" ORA. City also argued there was no Audit Report subject to inspection under the ORA until the final Audit Report issued, that it received the final Audit Report on or about May 29, and that Union

---

1. At all times relevant, Plaintiff Tommy Harrell was the Union president.

inspected and copied the final Audit Report on June 2. City further asserted that the draft Audit Report was exempt from inspection under the ORA, § 24A.9, as "personal notes and personally created materials . . . prepared as an aid to memory or research leading to the adoption of a public policy or the implementation of a public project." City lastly argued that, although it had "used" the draft Audit Report to prepare exhibits offered at the arbitration hearing, it had withdrawn those exhibits upon Union's objection, and thus had not "used" the draft Audit Report for any purpose.

¶ 5 Union responded. Union first asserted the draft Audit Report was a "record" in City's custody, used by City "in connection with the transaction of public business, the expenditure of public funds or the administering of public property," and subject to inspection under the ORA, § 24A.3(1). Union also asserted that the ORA, § 24A.4, required City to "keep and maintain complete records of the receipt and expenditure of any public funds reflecting all financial and business transactions relating thereto," and that, as a "financial" record required to be kept by City, the draft Audit Report was also subject to inspection under § 24A.4. Union argued the draft Audit Report, prepared by a third party auditor, did not constitute "personal notes" of a "public official" under the ORA, § 24A.9, and, given City's "use" of draft Audit Report to prepare for arbitration, § 24A.9 did not apply.

¶ 6 On consideration of the parties' submissions and arguments, the trial court granted City's motion to dismiss, finding that Union "obtained a copy of the Audit Report once it was completed and this case is moot." Union appeals, and the matter stands submitted on the trial court record. See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S., Ch. 15, App.

¶ 7 A "suit for declaratory and injunctive relief" under the ORA sounds "in equity, [and] the standard of review applicable to the ruling is whether it is clearly contrary to the weight of the evidence."

*Merrill v. Oklahoma Tax Com'n,* 1992 OK 53, ¶ 7, 831 P.2d 634, 639–641. (Footnotes omitted.) In such a case, "an appellate court may weigh the evidence, [but] it will neither disturb the trial court's findings nor its decree unless the chancellor's decision fails to pass muster under this well-known standard of review." *Id.* "Absent the standard's breach, the appellate court must indulge in the presumption that the decree is correct." *Id.*

¶ 8 However, an appellate court reviews an order granting a motion to dismiss or a motion for summary judgment *de novo,* without deference to the trial court's conclusion. *See, e.g., Lowery v. Echostar Satellite Corp.,* 2007 OK 38, 160 P.3d 959; *Estate of Hicks ex rel. Summers v. Urban East, Inc.,* 2004 OK 36, 92 P.3d 88. We will affirm an order granting a motion to dismiss only if it appears the plaintiff can prove no set of facts supporting relief. *Estate of Hicks,* 2004 OK 36, ¶ 5, 92 P.3d at 90. We will affirm an order granting a motion for summary judgment only if it appears "that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery,* 2007 OK 38, ¶ 11, 160 P.3d at 963–964.

¶ 9 A case is moot "if a decision on the question raised will not result in the granting of any relief." *Farm Credit Bank of Wichita v. Woodring,* 1993 OK 52, ¶ 1, 851 P.2d 532, 533, fn. 1. A case is not moot when " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *In the Matter of D.B.W.,* 1980 OK 125, ¶ 4, 616 P.2d 1149, 1151.[2]

¶ 10 In the present case, the trial court dismissed Union's action as moot after City produced, and Union inspected, the *final* Audit Report, apparently reasoning that City's production of the *final* Audit Report absolved City from any obligation to produce the *draft* Audit Report. However, City never produced the *draft* Audit Report in its

---

**2.** Quoting, *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975).

possession at the time of Union's request, and, as Union suggests, the *draft* Audit Report may or may not be the same as the *final* Audit Report.

¶ 11 Given the short period between City's refusal to provide the *draft* Audit Report and the arbitration hearing, it can hardly be said Union had an opportunity to fully litigate City's claimed exemption from production of the *draft*, and it is reasonable to expect City will take the same position in the future. Under these circumstances, and if, under the ORA, Union was entitled to inspection of the draft Audit Report upon its request prior to arbitration, this action should not have been dismissed as moot.

¶ 12 The ORA broadly defines "record" as:

all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business,....

51 O.S. § 24A.3 (1). "All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours," unless specifically exempted by the ORA. 51 O.S. § 24A.5; *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, 2003 OK 65, ¶ 12, 73 P.3d 871, 875.

¶ 13 "The purpose of the [ORA] is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power. 51 O.S.2001, § 24A.2." *Citizens*, 2003 OK 65, ¶ 12, 73 P.3d at 875. "Each public body subject to the Act is responsible for making records available to the public. 51 O.S.2001, § 24A.5(5)." *Id.*

"Unless a record falls within a statutorily prescribed exemption in the Act, the record must be made available for public inspection." *Id.* "The public body urging an exemption has the burden to establish the applicability of such exemption." *Id.*

■ ¶ 14 We first observe the ORA contains no provision dictating the manner in which to make a request for inspection of a record under the ORA. Regardless of the denomination of Union's request for production and inspection of the FY 2006–2007 Audit Report and "[a]ny other financial reports or documents used by [City] to make financial and budget decisions" as either a discovery request or an open records request, if the materials sought were subject to disclosure or production under either the Oklahoma Discovery Code, 12 O.S. §§ 3224, et seq., or the ORA, City was bound to produce them.

■ ¶ 15 In the present case, City claimed no privilege from discovery. Rather, City claimed an exemption from production of the draft Audit under § 24A.9. That section provides:

Prior to taking action, including making a recommendation or issuing a report, a public official may keep confidential his or her personal notes and personally created materials other than departmental budget requests of a public body prepared as an aid to memory or research leading to the adoption of a public policy or the implementation of a public project.

The parties cite, and we find, no Oklahoma authority construing the reach of this provision.

¶ 16 Like the ORA, the Freedom of Information Act (FOIA), 5 U.S.C. § 552, also broadly defines "record." 5 U.S.C. § 552(f)(2).[3] In this respect, the federal courts agree that, under FOIA, "personal material" is not an "agency record" subject to inspection. *See, e.g., Consumer Federation of America v. U.S. Dept. of Agriculture*, 383 F.Supp.2d 1 (D.D.C.2005); *Judicial*

---

**3.** "For purposes of this section, the term—... "record" and any other term used in this section in reference to information includes—(A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and (B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management."

*Watch, Inc. v. Clinton,* 880 F.Supp. 1 (D.D.C. 1995); *Bureau of Nat. Affairs, Inc. v. U.S. Dept. of Justice,* 742 F.2d 1484 (C.A.D.C. 1984). To determine "under what circumstances can an individual's creation of a record be attributable to the agency, thereby making the material an 'agency record' disclosable under FOIA, rather than personal material not covered by the Act," the federal courts "focus on the totality of the circumstances surrounding the creation, maintenance, and use of the document to determine whether the document is in fact an 'agency record' and not an employee's record that happens to be located physically within an agency." *BNA,* 742 F.2d at 1489–1490, 1492–1493.

¶ 17 In this inquiry, the federal courts look to various factors, including whether the documents "were in the agency's control," whether the documents were "generated within the agency," whether the documents were "placed into the agency's files," and whether the documents were "used by the agency 'for any purpose.'" *BNA,* 742 F.2d at 1493–1494. In some cases, it is an agency's "control" of the record that mandates production, while in others, it is the agency's "use" of the record that mandates production:

> .... In certain contexts, such as where a document is created by one agency and transferred to a second agency, control or possession is the critical analysis. But in cases ... where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA.

*BNA,* 742 F.2d at 1490.

■■■ ¶ 18 Applying this analysis in the present case, we need not determine whether a non-final, "draft" document is a "record"

subject to inspection under the ORA.[4] That is to say, in determining whether material is a "record" subject to inspection under the ORA, or exempted "personally created materials," we "focus on the totality of the circumstances surrounding the creation, maintenance, and use of the document," regardless of the "status" of a document as "preliminary" or "final."

¶ 19 So guided, we first note Union specifically requested inspection of both the FY 2006–2007 Audit Report and *"[a]ny other financial reports or documents used* by [City] to make financial and budget decisions." (Emphasis added.) Second, at the time of the Union's request, City clearly *possessed* and *controlled* a preliminary draft of the requested Audit Report. Third, and most importantly, it is also undisputed that City *used* the draft Audit Report as the basis for testimony and evidence offered at the arbitration hearing, and the fact that City withdrew its exhibits based on the draft Audit Report does not alter the fact that City *used* the draft Audit Report to prepare for and oppose Union's requested arbitration.

¶ 20 Given Union's request for *"any* financial reports or documents *used* by City," and City's *use* of the draft Audit Report to prepare for and oppose Union's demanded arbitration, we hold Union was entitled to inspect and copy the draft Audit Report under the ORA. The order of the trial court is REVERSED, and the cause REMANDED for further proceedings.

HANSEN, P.J. and MITCHELL, C.J., concur.

4. City cites *Petition of University Hospitals Authority,* 1997 OK 162, 953 P.2d 314, for the proposition that, until the final Audit Report issued, there was not an Audit Report subject to inspection. However, in *UHA,* the document sought was not even in existence at the time of the ORA request:

> .... [T]he contract was not completed until two days before the meeting, at which time it was made available to Protestants. Thus, the

"record" demanded by Protestants was made available to them as soon as it came into existence. The Authority, therefore, violated neither the Open Meeting Act nor the Open Records Act.

1997 OK 162, ¶ 16, 953 P.2d at 319–320. *UHA* does not address the question presented in the instant case concerning the right to inspect a non-final, "draft" document under the ORA.