2009 OK 57

**Victor CARBAJAL, Appellant,**

v.

**Baham SAFARY, Individually and Prestigious Properties, Inc., an Oklahoma Corporation Appellees.**

No. 104,547.

Supreme Court of Oklahoma.

July 7, 2009.

Rehearing Denied Sept. 14, 2009.

James Michael Love, Sloane Ryan Rojas, Titus Hillis Reynolds Love Dickman & McCalmon, P.C., Tulsa, OK, for Appellant.

Michael James King, M. Jean Holmes, S. Gregory Pittman, Winters, King & Associates, Inc., Tulsa, OK, for Appellees.

HARGRAVE, J.

¶ 1 Appellant, Victor Carbajal appealed from the trial court's order dismissing his action under the Residential Property Condition Disclosure Act, 60 O.S.2001 § 831 et seq., against Appellees Baham Safary, an Oklahoma real estate licensee, and Prestigious Properties, Inc., a company solely owned by Safary. Safary was retained by Carbajal to assist with the purchase of a home from Dennis and Yvonne Hobus. Carbajal made an offer to purchase the home for $86,000.00. Prior to the execution of the contract for sale, Dennis and Yvonne Hobus prepared and signed a disclosure statement required by the Act which reflected they were not aware of any defects in the structural integrity of the home.

¶ 2 The contract, which was effective October 28, 2002, provided for a ten-day inspection period. Carbajal did not have a structural inspection made. A few days after the contract was signed, the Sellers gave Safary a copy of a structural report prepared by a professional engineer in May 2002. Safary orally informed Carbajal that the sellers had delivered the report. Carbajal testified Sa-

fary advised him the report was "clean" and did not inform him of any structural defects identified in the report. Safary did not deliver a copy of the report to Carbajal until after closing.

¶ 3 Carbajal testified that he discovered the home's profound structural and foundation problems after he took possession. He discovered large cracks in the foundation after pulling back the carpet. Two engineers retained by Carbajal reported that the home had severe structural problems and that the costs to pier and grade the home and to repair the interior would cost approximately $70,000.00. Carbajal informed Safary about the defects and requested a copy of the report which was provided to him at that time.

¶ 4 Purchaser filed this action against Safary for violations of the Residential Property Condition Disclosure Act and the matter proceeded to a bench trial. After the presentation of Carbajal's evidence, Safary orally moved for dismissal of the action, the functional equivalent of a motion for directed verdict. Safary argued Carbajal was suing the wrong party and, in any event, he was improperly attempting to expand the liabilities under the Act to create a new legal duty. Without memorializing the reasons for its decision, the trial court entered a judgment sustaining Safary's application for dismissal.

¶ 5 On appeal to the Oklahoma Court of Civil Appeals, the court recognized the test for a motion to dismiss after the presentation of the plaintiff's evidence is "all evidence and reasonable inferences therefrom which favor the party opposing the motion must be taken as true. *Byford v. Town of Asher*, 1994 OK 46, ¶ 5, 874 P.2d 45,47. Any conflicting evidence which is favorable to the movant must be disregarded. *Id.* If there is any evidence which tends to show the plaintiff's right to recover, the dismissal motion should be overruled and the case allowed to proceed. *Id.*"

¶ 6 Based on this standard, the Court of Civil Appeals agreed that Carbajal failed to present any evidence tending to show that his agent's disclosure duties under the Act were triggered by the receipt of the six-month-old engineer's report. We grant certiorari to further clarify the holding of the Oklahoma Court of Civil Appeals.

¶ 7 The section of the Residential Property Condition Disclosure Act, as it pertains to the duties of the real estate licensee representing a purchaser, and as it existed at the time of the contract for the sale of the home provides:

A. A real estate licensee representing or assisting a seller has the duty to obtain from the seller a disclaimer statement or a disclosure statement and any amendment required by this act and to make such statement available to potential purchasers prior to acceptance of an offer to purchase.

B. A real estate licensee representing or assisting a purchaser has the duty to obtain and make available to the purchaser a disclaimer statement or a disclosure statement and any amendment required by the act prior to the acceptance of an offer to purchase.

C. A real estate licensee has the duty to disclose to the purchaser any defects in the property actually known to the licensee which are not included in the disclosure statement or any amendment.

D. A real estate licensee who has complied with the requirements of subsection A, B and C of this section shall have no further duties to the seller or the purchaser regarding any disclosures required under this act.

A real estate licensee who has not complied with the requirements of subsection A, B and C of this section shall be subject to disciplinary action by the Oklahoma Real Estate Commission as set forth in paragraph 6 of Section 858–208 of Title 59 of the Oklahoma Statutes.

E. A real estate licensee has no duty to the seller or the purchaser to conduct an independent inspection of the property and has no duty to independently verify the accuracy or completeness of any statement made by the seller in the disclaimer statement or the disclosure statement and any amendment.

60 O.S. Supp.1995 § 836. Superceded effective 01/01/2008

¶ 8 The conclusion of the structural inspection presented to Safary states:

This house appears to be in relatively good structural condition with evidence indicated by the minor defects of slight and minor foundation settlements. Minor slab deflections were indicated, particularly adjacent to the north wall and the east wall. This engineer did not consider these deflections as structurally significant.

The exterior defects noted at the northwest corner are indicating minor foundation rotation but the patch on the masonry was apparently done sometime ago, it appears to be relatively old. The crack has not re-opened (sic) and the movement does not appear to be an active foundation settlement problem. The interior defects associated with the slab deflection were relatively minor. No structural significance was attributed to any of these defects.

The slab deflection can be cosmetically corrected. It is possible to place a grout or mortar cap on top of the slab to level the slab around the perimeter, particularly along the north wall in the northeast and northwest bedrooms, and the southeast bedroom. Since there were no significant structural implications related to the slab deflection, the cap installation would simply be a cosmetic repair of this defects (sic). It is neither a structural requirement nor a structural recommendation to cap the slab or to raise the elevation of the slab. Underpinning of the slab can also be installed to lift and level the slab. However, the problem of underpinning would be that the slab is not constructed to support point loading that would be accomplish by underpinning. A void would likely be created under the slab, which would require under slab pressure grouting to completely fill the void and provide uniform support from the slab. This engineer does not recommend underpinning of the slab, particularly because there are no interior defects of structural significance attributed to the slab deflections.

The engineer at the end of his report listed the "Requirements" which state in their entirety: "There are no structural requirements at this residence."

¶ 9 The Court of Civil Appeals held:

Other than the Broker's receipt of the engineer's report, Purchaser presents no other evidence tending to show that Broker was actually aware of any of the structural and foundational defects discovered by Purchaser after he took possession and pulled back the carpet. Thus, we must determine whether Broker's receipt of the report, standing alone, triggered its duty to disclose "defects in the property actually known to the licensee which are not included in the disclosure statement or any amendment." In this regard, § 832(9) of the Act is instructive. This section defines the term "Defect" as "a condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property, or that would impair the health or safety of future occupants of the property."

When we apply this definition to the content of the engineer's report, we cannot find that the engineer identified any "defects" as that term is defined in the Act.

¶ 10 Other than the Engineer's report, Carbajal cannot point to any evidence that shows that Safary had any actual knowledge that there was any defect in the house. The Engineer's report showed the house to be in "relatively good structural condition" and the conclusion stated that there were no structural requirements. Safary did all that was required under 60 O.S. Supp.1995 § 836 by informing Carbajal that the report was "clean." Taking this evidence in the best light to Carbajal's case, the trial court was correct in granting a directed verdict upon Safary's motion to dismiss.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT AFFIRMED.**

¶ 11 CONCUR: HARGRAVE, OPALA, KAUGER, WATT, WINCHESTER, JJ.

¶ 12 DISSENT: EDMONDSON, C.J., TAYLOR, V.C.J., COLBERT, REIF, JJ.