2013 OK CIV APP 43

Gustavo LOPEZ and Valerie Lopez, Plaintiffs/Appellants,

v.

Todd B. ROLLINS; Katherine Ann Rollins; Todd B. Rollins Living Trust; Katherine A. Rollins Living Trust; Newport Appraisal Co., Inc.; McGraw Davisson Stewart, LLC; Walter & Associates, Inc.; Laura Hawkins; and Blake Loveless, Defendants/Appellees.

No. 110755.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 8, 2013.

As Corrected Feb. 19, 2013.

Certiorari Denied March 1, 2013.

William C. Searcy, Kenneth E. Crump, Jr., Barber & Bartz, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Brian T. Aspan, Tulsa Oklahoma, for Defendants/Appellees Todd B. Rollins, Katherine Ann Rollins, Todd B. Rollins Living Trust, and Katherine A. Rollins Living Trust.

Joseph R. Farris, Feldman Franden Woodard & Farris, Tulsa, Oklahoma, for Defendant/Appellee Newport Appraisal Co., Inc.

Robert R. Peters II, Lauren A. Pierce, Heroux & Helton, PLLC, Tulsa, Oklahoma, for Defendants/Appellees McGraw Davisson Stewart, LLC and Laura Hawkins.

Jennifer L. Struble, Secrest, Hill, Butler & Secrest, Tulsa, Oklahoma, for Defendants/Appellees Walter & Associates, Inc. and Blake Loveless.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Plaintiffs/Appellants Gustavo Lopez and Valerie Lopez (Buyers) appeal the trial court's order granting summary judgment in favor of Defendants/Appellees Todd B. Rollins and Katherine Ann Rollins, Todd B. Rollins Living Trust, Katherine A. Rollins Living Trust (collectively, Sellers), Newport Appraisal Co., Inc., McGraw Davisson Stewart, LLC (McGraw Davisson), Laura Hawkins, Walter & Associates, Inc., and Blake Loveless. After *de novo* review, we hold that Newport is entitled to judgment as a matter of law as to Buyers' negligence claim. We further hold that Sellers, McGraw Davisson, Hawkins, Walter & Associates, and Loveless are not entitled to judgment as a matter of law as to Buyers' negligent misrepresentation and fraud claims. There is a genuine dispute as to whether the Sellers and Brokers/Realtors represented the square footage of the house reasonably, recklessly, or with intentional dishonesty. The order of the trial court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

¶ 2 Prior to listing their house for sale, Sellers hired Suzanne Bloyed to conduct an appraisal. Bloyed determined the house contained 5,053 square feet of liveable space. Sellers engaged the services of Laura Hawkins, a real estate licensee employed by McGraw Davisson. McGraw Davisson was the listing transaction broker for the Sellers, and the house was co-listed with Blake Loveless, a real estate licensee employed by Walter & Associates. At the time the house was listed for sale, the Tulsa County Assessor reported the house contained 4,614 square feet. When Hawkins and Loveless asked Sellers about the square footage discrepancy between the appraisal and the county assessor's records, Sellers explained the discrepancy was due to an addition they built onto the home. Hawkins created the MLS listing using the square footage from the Bloyed appraisal. The MLS listing described the square footage as "5,053/CH," meaning 5,053 per courthouse records. The MLS listing stated that "[i]nformation is believed to be accurate but not guaranteed." Hawkins also created marketing materials for prospective

buyers which described the square footage as "5,053 sq. ft. per appraisal" and stated that "[i]nformation deemed reliable, but not guaranteed." Loveless created marketing materials which described the square footage as "5,053 square feet per courthouse records," and stated that "[a]lthough the information contained herein has been furnished by sources deemed reliable, none of such information has been verified and no representation, either express or implied, is made as to the accuracy thereof." The courthouse records did not indicate the house contained 5,053 square feet of liveable space.

¶ 3 Buyers entered into a contract to purchase the house September 8, 2007. The Oklahoma Uniform Contract of Sale of Real Estate entered into contained the following provision:

> Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with an Oklahoma licensed Home Inspector, registered professional engineer, licensed architect, professional craftsman, and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, and reviews. Buyer's investigations, inspections, and reviews may include, but not be limited to, the following:
>
> . . .
>
> 11) Square Footage. Buyer shall not rely on any quoted square footage and shall have the right to measure the Property.

Buyers' lending institution required that Newport Appraisal conduct an exterior-only appraisal of the property. Newport did not enter the home or take its own measurements. Rather, Newport consulted Bloyed and used her square footage calculation of 5,053 square feet. Prior to closing, Buyer Valerie Lopez called the lending institution to confirm the appraised value was satisfactory for the loan, and the lending institution confirmed it was. Buyers closed on the purchase November 15, 2007.

¶ 4 In April 2009, the Tulsa County Assessor reassessed the value of the house and reported the amount of livable space was 4,130 square feet. Buyers had their own appraisal conducted by Larry A. Stotts, who determined the amount of liveable space was

4,383 square feet. Buyers instituted this action against Sellers, McGraw Davisson, Hawkins, Walter & Associates, and Loveless for fraud and negligent misrepresentation. Buyers also sued Sellers for breach of contract and McGraw Davisson, Hawkins, Walter & Associates, and Loveless (collectively, Brokers/Realtors) for violations of the Real Estate License Code. Buyers sued Newport for negligence. Buyers contend they relied on the collective representations of all Appellees in deciding to purchase the house, and they would not have purchased it if they had known that the square footage was less than 5,053 square feet. All parties filed motions for summary judgment or partial summary judgment.

¶ 5 The trial court denied summary judgment for Buyers and granted summary judgment in favor of all Appellees. The trial court determined that the Residential Property Condition Disclosure Act (RPCDA), 60 O.S.Supp.2003 §§ 831–839, applied to representations of square footage, because the RPCDA was "the exclusive vehicle for recovery where misinformation is communicated in the sale of residential property." The trial court found that because Buyers had not asserted claims under the RPCDA, Sellers and Brokers/Realtors were entitled to judgment as a matter of law. The trial court also granted summary judgment in favor of Newport, because there was no evidence that Buyers relied on the square footage reported in Newport's appraisal before purchasing the house. Buyers appeal.

¶ 6 We review the trial court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Id.* Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2011, Ch. 2, App. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Nat'l Mortgage Ass'n*, 1999 OK 73, ¶ 6, 988 P.2d 1275, 1278.

¶ 7 The first issue is whether the RPCDA provides the sole and exclusive remedy for misrepresentations of square footage in the sale of residential property. Issues of statutory construction are questions of law to be reviewed *de novo*, and appellate courts exercise plenary, independent, and non-deferential authority. *Welch v. Crow*, 2009 OK 20, ¶ 10, 206 P.3d 599, 603. In cases requiring statutory construction, the cardinal rule is to ascertain and give effect to the intent of the Legislature. *Id.* The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole. *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439, 440.

¶ 8 According to the RPCDA, a seller of property located in Oklahoma shall deliver to the purchaser of such property a written property disclaimer statement or a written property condition disclosure statement. *See* 60 O.S. § 833(A)(1)–(2). The property condition disclosure statement shall include a statement of whether the seller has actual knowledge of defects or information related to water and sewer systems, structural systems, plumbing, electric, heating and air conditioning systems, termite infestation or damage, major fire or tornado damage, land use matters, existence of hazardous materials and other conditions of environmental impact, existence of prior manufacturing of methamphetamine, any other defects known to the seller, and other matters the Oklahoma Real Estate Commission deems appropriate. 60 O.S. § 833(B)(1)(a)–(j). The remedies section of the RPCDA provides, in pertinent part:

A. The purchaser may recover in a civil action only in the event of any of the following:

1. The failure of the seller to provide to the purchaser a disclaimer statement or a

disclosure statement and any amendment prior to acceptance of an offer to purchase;

2. The failure of the seller to disclose in the disclosure statement or any amendment provided to the purchaser a defect which was actually known to the seller prior to acceptance of an offer to purchase; or

3. The failure of the real estate licensee to disclose to the purchaser any defects in the property actually known to the real estate licensee prior to acceptance of an offer to purchase and which were not included in the disclosure statement or any amendment provided to the purchaser.

B. The sole and exclusive civil remedy at common law or otherwise for a failure under subsection A of this section by the seller or the real estate licensee shall be an action for actual damages, including the cost of repairing the defect, suffered by the purchaser as a result of a defect existing in the property as of the date of acceptance by the seller of an offer to purchase and shall not include the remedy of exemplary damages.

. . .

F. This act applies to, regulates and determines rights, duties, obligations and remedies at common law or otherwise of the seller, the real estate licensee and the purchaser with respect to disclosure of defects in property and supplants and abrogates all common law liability, rights, duties, obligations and remedies therefore.

60 O.S. § 837(A)–(B), (F). Sellers provided to Buyers a disclosure statement pursuant to § 837(A)(1). The question presented is whether failure to disclose the discrepancy between the square footage in the Bloyed appraisal and the Tulsa County Assessor's records was a defect which was actually known to the Sellers or Brokers/Realtors prior to the acceptance of the offer to purchase. *See* 60 O.S. § 837(A)(2)–(3). If the

representation of square footage comes within § 837(A), the RPCDA provides the sole and exclusive remedy available to Buyers. *See* 60 O.S. § 837(B).

¶ 9 Sellers and Brokers/Realtors argue and the trial court agreed that the RPCDA is a buyer's exclusive remedy for the misrepresentation of square footage. This argument is based on the Oklahoma Supreme Court's decision in *White v. Lim*, 2009 OK 79, 224 P.3d 679. Sellers and Brokers/Realtors rely on the Court's broad concluding statement that, "[t]he Legislature's intent that the [RPCDA] be the exclusive vehicle for recovery where misinformation is communicated in the sale of residential property is clearly stated in the amendatory language of [the RPCDA]." *Id.* ¶ 17, at 685.

■ ¶ 10 The Court's statement must be read in context. After the buyers in *White* discovered severe termite damage, they sued the sellers and broker for misrepresentation of the condition of the property. *See id.* ¶ 4, at 682. The RPCDA clearly requires that the condition disclosure statement include whether the seller has actual knowledge of termite infestation or damage. *See* 60 O.S. § 833(B)(1)(d). The issue in *White* was not whether termite damage came within the purview of the RPCDA. The issue was whether the buyers could bring a common law action independent of the RPCDA and recover punitive damages. *See White*, 2009 OK 79, ¶¶ 4, 9, 224 P.3d at 682–683. The Court held that "the mandatory, clear, and unmistakable language of Title 60 O.S.Supp. 2003 § 837 limits the right of a purchaser to recover for failure to disclose known defects in residential property to those provided in the [RPCDA]" and, therefore, buyers were limited to actual damages.[1] The RPCDA is the sole and exclusive remedy where misinformation is communicated in the sale of residential property, but only when that misinformation relates to defects or matters

---

1. The Court held that the RPCDA expressly prohibited awards of punitive damages. *White,* 2009 OK 79, ¶ 15, 224 P.3d at 684. Title 60, § 837 provides:

   The sole and exclusive civil remedy at common law or otherwise for a failure under subsection A of this section by the seller or the real estate licensee *shall be an action for actual damages,*

   including the cost of repairing the defect, suffered by the purchaser as a result of a defect existing in the property as of the date of acceptance by the seller of an offer to purchase and *shall not include the remedy of exemplary damages.*

   60 O.S. § 837(B) (emphasis added).

listed in 60 O.S. § 833(B)(1). The RPCDA only provides the sole and exclusive remedy for misinformation contemplated in the Act. Unlike *White,* the issue here is whether a discrepancy in measurements of square footage comes within the purview of the RPCDA.

¶ 11 Square footage is not one of the disclosures required by 60 O.S. § 833. The Residential Property Condition Disclosure Statement produced by the Oklahoma Real Estate Commission does not include a disclosure of square footage. The buyer may bring a civil action under the RPCDA only if the seller or real estate licensee fails to disclose in the disclosure statement a *defect* actually known to the seller or real estate licensee. *See* 60 O.S. § 837(A)(2)–(3). The RPCDA defines "defect" as "a condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property, or that would impair the health or safety of future occupants of the property." 60 O.S. § 832(9). According to § 837, the sole and exclusive remedy for a failure to disclose a defect actually known to the seller or real estate licensee "shall be an action for actual damages, *including the cost of repairing the defect.*" 60 O.S. § 837(B) (emphasis added). Failure to disclose a discrepancy in square footage measurements is not a condition, malfunction or problem that can be repaired. Square footage is not contemplated as a condition that requires disclosure under the RPCDA, and inaccurate square footage is not a defect that can be repaired. Therefore, we hold (1) that square footage is not a required disclosure under the RPCDA, and (2) that the RPCDA is not the sole and exclusive remedy for the misrepresentation of square footage.

¶ 12 The next issue is whether there is a genuine dispute of material fact as to the negligent misrepresentation and fraud claims against Sellers and Brokers/Realtors. Oklahoma has adopted the Restatement (Second) of Torts § 552 for negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See, e.g., Stroud v. Arthur Andersen & Co.,* 2001 OK 76, ¶ 34, 37 P.3d 783, 793–794. The elements of fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his or her own detriment. *See Bowman v. Presley,* 2009 OK 48, ¶ 13, 212 P.3d 1210, 1217–18. We hold that one could infer negligent misrepresentation and fraud from the Sellers and Brokers/Realtors' failure to disclose the square footage discrepancy between the Bloyed appraisal and the county assessor's records.[2] Sellers admit material facts are in dispute, and whether Brokers/Realtors' representations of square footage were reasonable, reckless, or made with intentional dishonesty is a question of fact for the jury. Therefore, Sellers and Brokers/Realtors are not entitled to judgment as a matter of law.

¶ 13 Sellers admitted in their Response to Buyers' Counter Motion for Partial Summary Judgment that if they were not entitled to summary judgment based upon the RPCDA, Buyers were not entitled to summary judgment because the elements of negligent misrepresentation and fraud were hotly disputed. Brokers/Realtors argued that, based on *Rice v. Patterson Realtors,* 1993 OK 103, 857 P.2d 71, and *Dawson v. Tindell,* 1987 OK 10, 733 P.2d 407, Buyers' claims were barred by the disclaimers on the marketing materials and Buyers' waiver under the sales contract and closing acknowledgment.

¶ 14 Nearly identical waivers and disclaimers were involved in *Bowman v. Presley.*

---

2. On the other hand, if Sellers and Brokers/Realtors had only a single measurement for square footage and disclosed the source of the measurement, no inference of negligent misrepresentation or fraud would arise.

*See* 2009 OK 48, ¶ 4, 212 P.3d at 1215 n. 6–8. In *Bowman,* the buyers purchased a house that had been represented as containing 2,890 square feet. *Id.* ¶ 2, at 1214. Shortly after closing, the buyers received a copy of a mortgage appraisal which found the house was 2,187 square feet. *Id.* ¶ 3, at 1215. The buyers brought suit against the broker, realtor, and sellers for damages based on fraud, breach of implied contract, and violations of the Oklahoma Real Estate License Code. *Id.* The broker, realtor, and sellers moved for summary judgment and argued that buyers had a duty to independently determine the property's correct size and that the buyers waived their right to sue by signing the sales contract and closing agreement. *Id.* ¶ 4, at 1215. The Oklahoma Supreme Court held that the sellers and broker/realtor were not entitled to summary judgment on the buyer's fraudulent misrepresentation claims. The Court noted that the buyers' claims were anchored in fraud and determined:

> [T]he relevant duty of a real estate licensee is to treat all parties with honesty. A licensee may incur liability for failure to uphold that duty when lay persons such as Buyers rely upon their representations made as licensed professionals. *The question of whether Broker and Realtor represented the property size reasonably, recklessly, or with intentional dishonesty must be resolved by the trier of fact.*

*Id.* ¶ 27, at 1221 (emphasis added). The Court summarized its holding:

> Buyers of real property may rely on positive representations made by realtors and sellers about the property's size. Representations of the size of real property are statements of material fact, not expressions of opinion, and a buyer need not conduct a separate investigation to ascertain their truth. If the buyer later alleges fraudulent misrepresentation against the realtor or seller, *questions of whether the buyer was in fact deceived and suffered detriment because of the misrepresentation must be decided by the trier of fact.* A real estate licensee is in such instances also bound by a professional duty to treat all parties with honesty.

*Id.* ¶ 31, at 1222 (emphasis added).

¶ 15 Brokers/Realtors in this case have advanced the same arguments as the broker/realtor in *Bowman.* According to *Bowman,* the question of whether a real estate licensee represented the square footage of the house in a manner that was reasonable, reckless, or intentionally dishonest must be resolved by the trier of fact. Therefore, Sellers and Brokers/Realtors are not entitled to judgment as a matter of law as to the negligent misrepresentation and fraud claims, and we reverse and remand for further proceedings.

¶ 16 The final issue on appeal is whether Newport is entitled to judgment as a matter of law as to Buyers' negligence claim. It is undisputed that Newport's Exterior–Only Inspection Residential Appraisal Report reflected the prior appraisal's measurement of 5,053 square feet. It is also undisputed that Buyers had not seen Newport's appraisal report prior to closing. Prior to closing, the lending institution told Buyers only that the appraised value was satisfactory for the loan, not that the house measured at 5,053 square feet. Because Buyers did not rely on the square footage information contained in Newport's appraisal report, Newport could not have been the proximate cause of harm to Buyers. We affirm the part of the trial court's order granting summary judgment in favor of Newport.

¶ 17 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

BELL, J., concurs.

JOPLIN, Chief Judge, concurs in part, dissents in part.

I would affirm the trial court's judgment completely.