2016 OK CIV APP 76

**Jason Oliver STAUFF, Plaintiff/Appellant,**

v.

**Roy and Kimberly BARTNICK, Individuals, and Paramount Homes Real Estate Co., an Oklahoma Corporation, Defendants/Appellees,**

and

**Stuart Benge, d/b/a Stu Benge Plb. Htg. AC, and Greg Palmer Electric, LLC, an Oklahoma Limited Liability Company, Defendants.**

**Case Number: 113507**

Court of Civil Appeals of Oklahoma, Division No. 3.

Decided: 09/02/2016

Rehearing Denied October 18, 2016

Mandate Issued: 12/14/2016

Patrick Lee Neville, Jr., Gungoll, Jackson, Box & Devoll, P.C., Enid, Oklahoma, for Plaintiff/Appellant,

Katresa J. Riffel, Jonathan F. Benham, Mitchel, Gaston, Riffel & Riffel, Enid, Oklahoma, for Defendants/Appellees Roy and Kimberly Bartnick,

Diane M. Black, W. Michael Hill, Secrest, Hill, Butler & Secrest, Tulsa, Oklahoma, for Defendant/Appellee Paramount Homes Real Estate Co.

Wm. C. Hetherington, Jr., Judge:

¶ 1 After purchasing a home in Enid, Oklahoma, Plaintiff Jason Stauff (Buyer) filed an action alleging violations of Oklahoma's Residential Property Condition Disclosure Act (Disclosure Act) and negligence against the sellers, real estate broker, and home inspectors.[1] Buyer appeals a single trial court order granting 1) summary judgment in favor of Defendants Kimberly Bartnick and her husband, Roy Bartnick (collectively the Bartnicks or Sellers) and also 2) the motion to dismiss for failure to state a claim pursuant to 12 O.S. 2011 2012(B)(6) filed by Defendant Paramount Homes Real Estate Co. (Broker or Paramount). Because the evidentiary material presented to the trial court establishes disputed material facts about the Sellers' and Broker's actual knowledge of the alleged defects in the residence, we reverse the order granting summary judgment. Concluding Buyer's petition states a claim for failure to disclose known defects against Broker, we reverse the order granting its dismissal mo-

---

1. Buyer dismissed without prejudice his negligence claim against Greg Palmer Electric LLC. Three months later Buyer dismissed with prejudice the same claim against Stuart Benge, d/b/a "Stu Benge Plb. Htg. AC."

tion. The case is remanded for further proceedings.

## STANDARD OF REVIEW

¶ 2 This appeal is governed by and follows the procedure set forth in Oklahoma Supreme Court Rule 1.36, 12 O.S. 2011, ch. 15, app. 1, without appellate briefing. "An appellate court reviews an order granting a motion to dismiss or a motion for summary judgment *de novo*, without deference to the trial court's conclusion." *International Union of Police Associations v. City of Lawton*, 2009 OK CIV APP 85, ¶ 8, 227 P.3d 164, 166. "We will affirm an order granting a motion to dismiss only if it appears the plaintiff can prove no set of facts supporting relief." *Id.*, (citing *Estate of Hicks ex rel. Summers v. Urban East, Inc.*, 2004 OK 36, 92 P.3d 88, 90). "We will affirm an order granting a motion for summary judgment only if it appears 'that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.*, (quoting *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963–964).

## FACTS

¶ 3 Broker is an Oklahoma corporation with its principal place of business in Enid, Oklahoma. The record establishes Buyer and his wife were residing in Texas when, as his petition alleges, "on or about July 19, 2012, [he] retained Paramount as a transaction broker for assistance in purchasing residential property located at 501 S. Hayes, Enid, Oklahoma (the Residence), owned by the Bartnicks." On July 22, 2012, Buyer and the

Bartnicks executed a contract for sale of the Residence and Buyer paid $500.00 in earnest money toward the $155,000.00 total purchase price. Buyer alleges "the Bartnicks provided to [him] disclosures as required by the [Disclosure Act, 60 O.S.2011 831 *et seq*],[2] but intentionally failed to identify numerous defects in the Residence" and that "Paramount was aware of defects in the Residence which were not disclosed but failed to inform [him]." For these alleged violations of the Disclosure Act by Sellers and Paramount, Buyer seeks actual damages.

¶ 4 Buyer also alleges "Paramount negligently performed its duties as transaction broker, including, but not limited to, failing to disclose all documents and information necessary to [Buyer], to provide for all inspections as requested by [Buyer], and to afford [him] a walkthrough of the Residence after the Bartnicks had moved out." He further alleges "Paramount recommend[ed] that [he] misrepresent the condition of the property to take advantage of warranty services."[3] Buyer finally alleges the parties closed on the Residence on or about August 30, 2013, and after moving into the Residence on or about September 6, 2013, he "discovered it to be rife with defects, unsafe, and of significantly reduced value, including needing repairs expected to cost greater than $10,000.00."

¶ 5 The Bartnicks timely filed an answer, specifically denying Buyer's material allegations of their failure to identify known defects in the Residence.[4] Paramount filed a special appearance and joined with it a 2012(B)(6) motion to dismiss, attaching Buyer's petition. Paramount admits Buyer retained it as a "transactional broker"[5] whose

---

**2.** Because the relevant facts occurred in July 2012, the amendments to several sections in the Disclosure Act that went into effect in November 2013 do not apply. All citations to the Disclosure Act will be to its 2011 version.

**3.** Unlike Buyer's allegations relating to Paramount's pre-closing conduct, Buyer does not identify in his petition when Paramount's recommendation allegedly occurred.

**4.** In separate paragraphs in Buyer's petition, he alleges Sellers "intentionally failed to identify numerous defects in the Residence" and "failed to disclose the existence of known defects in the Residence."

**5.** The Oklahoma Real Estate License Code defines "transactional broker" as "a broker who provides services by assisting a party in a transaction without being an advocate for the benefit of that party." 59 O.S. 2011 858–360. "Transaction" means "any or all of the steps that may occur by or between parties when a party seeks to buy, sell, lease, rent, option or exchange real estate and at least one party enters into a broker relationship subject to [the Code]." 858–351(4). "Broker" means a "real estate broker as defined in [858–102 of this title] and means, further, except where the context refers only to a real estate broker, an associated broker associate, sales associate or provisional sales associate au-

duties are mandated by 858–353(A) of the Oklahoma Real Estate Code, 59 O.S.2011 858–101 *et seq* (Code), but argues his petition alleges only a violation of its Code duty to "disclose information pertaining to the property as required by the [Disclosure Act]." See 858–353(A)(6) of the Code. Contending 836 of the Disclosure Act limits a real estate licensee's duty to disclose to "defects" about which a licensee had actual knowledge, Paramount argues Buyer's own allegations show "potential defects in the Residence outside of what was disclosed in [the Bartnicks'] statement and the inspection report was not available prior to closing." Paramount finally argues Buyer's petition must be dismissed for failure to state a claim upon which relief can be granted because an action can only be brought against a real estate licensee under the [Disclosure Act] for its failure to disclose defects in the property actually known "prior to acceptance of an offer to purchase."

¶ 6 Buyer objects to dismissal, arguing the "express text" of his petition alleges Paramount negligently performed its Code duties as a transaction broker "to treat all parties with honesty and exercise reasonable skill and care" and also failed to disclose known defects. Paramount replied, arguing, inter alia, the Disclosure Act was the exclusive remedy for the substantive claims made by Buyer, and at a minimum, his cause of action for professional negligence must be dismissed. Paramount's dismissal motion was apparently initially denied.[6] In a timely filed answer Paramount specifically denied Buyer's allegation that it "was aware of defects in the Residence which were not disclosed" and "failed to inform [Buyer]."

¶ 7 Buyer later moved for partial summary judgment against Paramount on the cause of action for professional negligence. Reasserting Paramount's duties under the Code and the Disclosure Act, Buyer attached a Disclosure Statement the Bartnicks signed in 2013 and provided to him and other evidentiary material to support his argument that Paramount had actual knowledge of defects in the Residence that were not disclosed because of its participation in the sale of the same property in 2010 during which Seller Kimberly Bartnick, formerly Kimberly Stallcup, was the purchaser.

¶ 8 Paramount responded, admitting the majority of Buyer's undisputed facts, including the 2010 sale of the Residence during which Ms. Stallcup retained Paramount as a transaction broker and she received a disclosure statement from the seller. Paramount argued a different agent, Ms. Cronkhite, assisted in the 2010 transaction for the Residence, the inspection reports and invoices were sent to her, those "reports and invoices became part of the transaction file for the 2010 sale of [the Residence] between [Ms.] Shaunessy and [Ms.] Stallcup," and the repairs disclosed by the 2010 electrical and plumbing inspections were completed.

¶ 9 Paramount also listed undisputed facts regarding the 2013 transaction for the Residence during which Amber Sprague was the real estate licensee. As relevant here, Paramount attached evidentiary material, including Ms. Sprague's affidavit, to support non-liability based on: 1) a 2013 termite inspection report Buyer received that shows prior infestation and treatment but recommended no treatment was necessary, 2) Ms. Sprague's offer of a pre-closing walk-through of the Residence to Buyer and his wife was declined because their dogs were with them, 3) Paramount's "confidentiality policy regarding any transaction in which an agent is not involved"; and 4) Ms. Sprague "never had personal knowledge of any defects in the Residence nor had she ever been involved in any real estate transaction for the Residence." The trial court denied Buyer's mo-

thorized by the real estate broker to provide brokerage services." 858–351(1). "Party" means "a person who is a seller, buyer, landlord, or tenant or a person who is involved in an option or exchange." 858–351(2).

**6.** There is no order denying Paramount's motion to dismiss included in the Accelerated Record or listed in the certified court appearance docket.

However, the latter does list a court minute filed February 10, 2014, stating "Deft. Paramount Homes to have 10 days to answer." The implication from the court minute entry, i.e., trial court denied Paramount's motion to dismiss—is supported by the order on appeal, which states "Paramount's Motion to Dismiss is *reconsidered* and is also hereby granted."

tion for partial summary judgment on Paramount's liability for professional negligence.[7]

¶ 10 Following Buyer's deposition, the Bartnicks moved for summary judgment on Buyer's sole cause of action against them—failure to disclose known defects in the Residence. The Bartnicks argued Buyer had no evidence they had actual knowledge of the alleged undisclosed defects, attaching their separate affidavits specifically denying approximately eighteen undisclosed defects Buyer had identified during his deposition. Buyer opposed summary judgment, resubmitting the same evidentiary materials attached to his earlier motion for partial summary judgment against Paramount to controvert the Bartnicks' claim of no actual knowledge of any defects in the Residence.

¶ 11 According to the certified court appearance docket included in the accelerated record, the trial court took the matter under advisement. After Seller filed a "continued objection" to summary judgment, the trial court set a hearing time on October 31, 2014 for the motion for summary judgment. By Order filed November 19, 2014, the trial court noted the appearance of each party's counsel at the hearing and found "[Bartnicks'] motion for summary judgment is granted" and "[Paramount's] Motion to Dismiss is reconsidered and is also hereby granted." From this order, Buyer appeals.

### Alleged Errors

¶ 12 Buyer's Petition in error challenges the dismissal and summary judgment rulings in the single order on appeal and also the trial court's intermediate ruling denying his motion for partial summary judgment on Paramount's liability for professional negligence. We begin with the summary judgment ruling in favor of the Bartnicks followed by the separate rulings in favor of Paramount.

7. There is no court minute or order denying Buyer's motion for partial summary judgment included in the Accelerated Record. However, the certified appearance docket includes an April 4, 2014 entry stating "Summary Judgment denied."

### ANALYSIS

#### Applicable law

¶ 13 One of the purposes for the Disclosure Act is "placing a limitation on the doctrine of *caveat emptor* in real estate sales and expanding the situations in which a seller will be liable for structural or other covered defects." *Rogers v. Meiser*, 2003 OK 6, 13, 68 P.3d 967, 971. This purpose is partially accomplished by requiring a seller of property "to deliver or cause to be delivered to the purchaser of such property,"[8] as occurred in this case, "a written property condition disclosure statement . . .which shall include the information set forth in [ 833(B) ]." 833(A)(2). "Disclosure" means "a written declaration required by this act based on *actual knowledge of the seller* regarding certain physical conditions of the property." (Emphasis added.) 832(10).

¶ 14 A *seller* "shall not be liable for a defect or other condition in the property *if the existence of the defect or other condition in the property was disclosed in the disclosure statement or any amendment* delivered to the purchaser before acceptance of the offer to purchase." (Emphasis added.) 835(A). "Defect" is defined in the Act as a "condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property, or that would impair the health or safety of future occupants of the property." 60 O.S. 2011 832(9).

¶ 15 A *seller* is exempt from liability for "any erroneous, inaccurate or omitted information supplied to the purchaser as a disclosure required by this act" in certain circumstances, including if "[t]he error, inaccuracy or omission was not within the actual knowledge of the seller." *See* 835(B)(2). A purchaser may recover in a civil action brought under the Disclosure Act if a *seller* fails "to disclose in a disclosure statement . . . a defect which was actually known to the seller

8. Section 832(8) of the Disclosure Act defines "property" as "residential real property improved with not less than one nor more than two dwelling units." The 833(A) disclaimer or disclosure statements are also not required for certain transfers of ownership/interest, including "newly constructed, previously unoccupied dwelling." *See* 838(A)(1)–(9) of the Disclosure Act.

prior to the acceptance of an offer to purchase." 837(A)(1).

¶ 16 Another purpose of the Disclosure Act is to delineate the duty or lack thereof of a real estate licensee.[9] *Rogers v. Meiser*, 2003 OK 6, ¶ 13, n. 18, 68 P.3d 967. Pursuant to 836(B), Paramount's two duties as a real estate licensee "assisting a purchaser" are: 1) to obtain and make available to the purchaser a written disclosure statement and any amendment required prior to acceptance of an offer to purchase and 2) to disclose to the purchaser any defects in the property actually known to the licensee which are not included in the disclosure statement or any amendment. A purchaser may recover in a civil action brought under the Disclosure Act against a *real estate licensee* if the licensee fails "to disclose to a purchaser a defect actually known to the real estate licensee prior to the acceptance of an offer to purchase *and* which were not included in the disclosure statement." 60 O.S. 2011 837(A)(2).

*Summary Adjudication in favor of the Sellers*

¶ 17 In this case the 2013 Disclosure Statement the Bartnicks completed represented "the Residence had not been damaged or affected by flood, storm run-off, sewer backup, drainage or grading problems." The Disclosure Statement further represents the Bartnicks "were not aware of:" 1) "water seepage, leakage or other drainage problems in any of the improvements on the property"; 2) "any alterations or repairs having been made to correct defects or problems"; 3) "treatment for termites..."; 4) "any damage caused by termites ... on the Residence"; and 5) "other defect(s), affecting the Resi-

dence, not otherwise disclosed." By affidavit attached to their summary judgment, the Bartnicks each deny actual knowledge of numerous conditions, malfunctions or problems Buyer identified during deposition as undisclosed "defects" in the Residence.

¶ 18 The dispositive issue is whether the evidentiary material, considered in the light most favorable to Buyer, reveals disputed material facts or undisputed material facts with conflicting inferences of the Bartnicks' *actual knowledge* of the alleged "defects" prior to acceptance of Buyer's offer to purchase. Oklahoma Courts have considered this issue generally when affirming summary judgment based on the failure of homebuyers to produce evidence the seller or agent/real estate licensee had actual knowledge of a defect.[10]

¶ 19 The Disclosure Act does not define actual knowledge, however we find *Carbajal v. Safary*, 2009 OK 57, 216 P.3d 289, instructive on its meaning. The sellers in *Carbajal* signed a disclosure statement reflecting they were not aware of any defect in the structural integrity of their house. To assist with its purchase, the buyer, Mr. Carbajal, retained a real estate licensee. After the parties' executed a purchase contract, the sellers *gave* a copy of a six month old structural report prepared by an engineer to the licensee. He then *orally informed* Carbajal about the report, advised him it was "clean," and after the closing gave him a copy of the report. Carbajal took possession of the house and while pulling up carpet found large cracks in the foundation. He filed suit against only the licensee for violations of the Disclosure Act, which was dismissed after he presented his evidence at the bench trial.

---

9. Under the Disclosure Act definitions, "real estate licensee" means "a person licensed under the Oklahoma Real Estate License Code." 60 O.S. 2011 832(4). As defined in the Code, " '[l]icensee' shall include any person who performs any act, acts or transactions set out in the definition of broker and licensed under the [Code]." 59 O.S.2011 858–102(11). See fn. 5 for the Code definition of "broker." Both the Disclosure Act and the Code define "person" as including an individual or a corporation, ability company, partnership, association, trust or other legal entity or any combination thereof." 832(6)

10. *See Moore v. Williams*, 2008 OK CIV APP 76, 192 P.3d 1275 (Buyers did not submit evidence of the realtors' actual knowledge of prior methamphetamine manufacturing; summary judgment affirmed); *Keeler v. GMAC Global Relocation*, 2009 OK CIV APP 88, 223 P.3d 1024 (affirmed summary judgment finding even if on-owner/occupier GMAC had not substantially complied with the Disclosure Act's disclosure requirements for a seller, no evidence produced it had actual knowledge of the defects or accuracy of the prior owner's disclosure statement.

¶ 20 The Court of Civil Appeals in *Carbajal* affirmed the trial court's dismissal, finding there was no evidence showing his agent's disclosure duties under the Act were triggered by the receipt of the engineer's report, because it did not identify any "defect" as defined by the Disclosure Act. The Supreme Court granted certiorari "to further clarify" that holding, considered the licensee's duties under the Disclosure Act, reviewed the engineer's report, and held:

> Other than the engineer's report, Carbajal cannot point to any evidence that shows [the licensee] had any actual knowledge that there was any defect in the house. The Engineer's report showed the house to be in "relatively good structural condition" and the conclusion stated that there were no structural requirements. 2009 OK 57, ¶ 10, 216 P.3d 289.

¶ 21 In *Carbajal*, there was no dispute the licensee received the engineer's report, and therefore, the dispositive issue was whether the substance of that report actually identified a structural defect which he did not disclose to the purchaser. This issue is not addressed by the Bartnicks' summary judgment motion, whose affidavits simply deny that when signing the June 2013 disclosure statement they "had no actual knowledge of any defects" in the various systems or structures in the Residence.

¶ 22 To dispute the Bartnicks' affidavits, Buyer attaches numerous documents Paramount undisputedly *received* between July–August 2010 during the sale of the Residence for which Paramount's real estate licensee was a transaction broker for the purchaser, Kimberly Stallcup (now Seller Kimberly Bartnick), *i.e.*, the 2010 Disclosure statement, inspection reports with cost estimates, repair invoices, termite inspection and treatment report, and an addendum to the 2010 purchase contract.

¶ 23 The 2010 Disclosure Statement reveals the seller indicated the Residence "had been damaged or affected by flood, storm run-off, sewer backup, drainage or grading problems." The seller also wrote in the Disclosure Statement's designated area for explaining questions to which "yes" was circled that "There is occasional water from heavy raining in the basement." Ms. Stallcup's initials are located on all of the Disclosure Statement's three pages.

¶ 24 The 2010 inspection reports, repair cost estimates and repair invoices identify the Residence by its street address and "Paramount" as either the party who ordered the services and/or to whom the bill was mailed or hand-delivered. Several invoices were specifically addressed to Paramount with the notation, "Attn: Ms. Cronkhite." The 2010 termite inspection that reveals active termites and termite damage, indicates this report was ordered and provided only to Paramount. Another invoice dated 10/31/2010, the date of the closing, is billed to Paramount and describes $1,525.00 repairs made to the AC system, ducts, venting for hot water tanks, etc.

¶ 25 However, two invoices from one plumbing business dated 8/1/2010 are addressed to "Kimberly Stallcup" with the Residence's street address. Two other invoices from a different plumbing company, dated "8/19/2010" and "10/08/2010," have "Kimberly Stallcup" written in a lower invoice corner with no named addresee or street address. The "8/19/2010" plumbing invoice indicates "main sewer plugged … had to dig up … run 80 ft. cable to main, pulled out lots of hair."

¶ 26 To "Addendum A" to the 2010 purchase contract, "Kimberly Stallcup" signed her name on July 23, 2010, which in the handwritten body of Addendum A, some unknown person wrote,

> "Due to the inspection reports, amount exceeds contract price of $750 to be paid by Seller for repairs, This Buyer is requesting repairs in the amount of inspection reports to be paid by the [Seller] in the amount of $1850 for plumbing [and] $1250 on electrical, or actual amount if less".... and "Termite Treatment $875 or actual amount if less."

Addendum A establishes Ms. Stallcup may have had *general* knowledge of the plumbing and electrical inspections and the estimated costs for the necessary repairs listed in those inspections three years prior to the subject transaction. However, neither Addendum A

nor anything else in the record demonstrates whether Ms. Stallcup was simply informed orally of such by Paramount's licensee, as in *Carbajal*, or if she personally received any of the inspection reports and repair cost estimates for her own review. Although she clearly indicated on her 2013 Disclosure statement she "was not aware of ... any alterations or repairs having been made to correct defects or problems," nothing in the record indicates whether Ms. Stallcup (now Mrs. Bartnick) had actual knowledge about what specific repairs, if any, were made before the closing in 2010 or at anytime thereafter.

¶ 27 It is also unclear from Addendum A whether Ms. Stallcup had actual knowledge of a Termite Treatment to the Residence because that part of the handwritten statement was apparently added at a later time, as indicated by the contracting parties' initials, KJS and "KS by MtK," written next to the termite treatment price. Nothing in the record establishes Ms. Stallcup's relationship to "MtK." Further, similar to the Termite Inspection Report dated July19, 2010 that was marked "forwarded to.... Agent and Inspecting Company," the Termite Follow-Up Report dated August 3, 2010 was forwarded only to "Agent." Neither report was signed by Ms. Stallcup, and there is nothing in the record to demonstrate Paramount ever sent or gave Ms. Stallcup a copy of either report.

¶ 28 Without addressing all the alleged defects, the evidentiary material submitted to the trial court, considered in the light most favorable to Buyer, demonstrates the existence of disputed material facts as to the Bartnicks' actual knowledge of the various alleged "defects" in the Residence prior to their acceptance of Buyer's offer to purchase which they did not disclose in their 2013 Disclosure Statement. The trial court erred in granting the Bartnicks' motion for summary judgment. That part of the order on

appeal is reversed and remanded for further proceedings.

### *Denial of Partial Summary Judgment against Paramount*

¶ 29 Buyer now alleges trial court error with this interlocutory decision, arguing "it is undisputed Paramount as a corporation had *knowledge* the "allegations in the 2013 Disclosure Statement were false." Buyer further argues Paramount acted negligently in not alerting him, and can not escape liability by establishing "an overbroad (sic) confidentiality policy and denying the intracorporate flow of knowledge to its employees."

¶ 30 Buyer moved for partial summary judgment on Paramount's liability for professional negligence, arguing, *inter alia*,[11] it "had a duty to protect [Buyer] from injury, *i.e.*, by being honest about the actual history of the Residence and/or by noticing and informing [him] of the contradictions between the 2010 Disclosure Statement, inspections and repair invoices and the 2013 Disclosure Statement." Buyer's statement of undisputed material facts describe the details of Seller Kimberly Bartnick's and Paramount's prior knowledge of the Residence's problems and repairs and both parties' failure to disclose the same three years later.

¶ 31 "The existence of a duty of care is a threshold issue in any negligence action." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964. "Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action." *Id.*

¶ 32 Although expressly seeking a liability judgment against Paramount for "professional negligence" under the Code, the duties Buyer actually identifies and claims Paramount owes him but breached, as well as his arguments and statement of undisputed

---

11. Buyer argues and includes as a undisputed material fact that Paramount negligently provided him with a wrong disclosure statement for the Residence, *i.e.*, one for another house in Enid he viewed the same day. Review of his evidentiary material together with that added by Paramount reveals Buyer made an offer on the other house, whose seller was undisputedly represented by a different broker who gave Buyer via Ms. Sprague an outdated disclosure statement. Before the other licensee could provide Ms. Sprague with a current disclosure statement, that seller denied Buyer's offer. The undisputed evidentiary material further reveals Buyer received the disclosure statement from the Bartnicks prior to their acceptance of his offer.

material facts, only seeks a determination of Paramount's failure to disclose known defects to Buyer. However, the Disclosure Act is "the exclusive vehicle for recovery where misinformation is communicated in the sale of residential property." *White v. Lim*, 2009 OK 79, ¶ 17, 224 P.3d 679, 685. *See also Lopez v. Rollins*, 2013 OK CIV APP 43, ¶ 10, 303 P.3d 911, 915 (it is sole and exclusive remedy for misinformation contemplated by the Act.) The Disclosure Act "applies to, regulates and determines rights, *duties*, obligations, and remedies *at common law or otherwise* of the seller, real estate licensee, and *purchaser with respect to disclosure of defects in the property* and *supplants and abrogates all common law liability*, rights, duties, obligations and remedies therefore." 60 O.S.2011 837(F). Thus, as argued in Buyer's motion for partial summary judgment, Paramount's duties and Buyer's rights and remedies must be determined pursuant to the Disclosure Act.

¶ 33 In its response to Buyer's partial summary judgment motion, Paramount does not deny its receipt and even admits possession of the various documents in a 2010 Transaction file for the Residence. From our research, only two courts have been presented with facts similar to this case and found actual knowledge of defects may be obtained from a broker/licensee's prior representation or information they obtained from third parties.[12]

¶ 34 Paramount also fails to provide any real argument or supporting authority for its confidentiality policy, upon which it bases its argument that "at no time did [Ms.]

Sprague or Paramount Homes have actual knowledge of any defects in the Residence which were not revealed to [Buyer] prior to closing."

¶ 35 The evidentiary material establishes Paramount's confidentiality policy serves a useful purpose by keeping financial information and Social Security numbers private. Nevertheless, to the extent its policy purports to keep confidential information that a real estate licensee is *required* to disclose to the purchaser pursuant to the Disclosure Act, we conclude Paramount's confidentiality policy is contrary to law and the purposes of this Act. We further conclude the evidentiary material Buyer submitted to support his motion for partial summary against Paramount demonstrates undisputed material facts from which reasonable persons could differ on the issue of Paramount's actual knowledge of each of the alleged "defects" at issue. Thus, we find no error with the trial court's denial of Buyer's motion for partial summary judgment.

### *Granting of Paramount's Motion to Dismiss*

#### Sua Sponte Dismissal of Buyer's claims against Paramount

¶ 36 Buyer alleges in his Petition in Error that the trial court erred "by *sua sponte* reconsidering and granting dismissal to [Paramount]."[13] In this case approximately 9 months had passed since the trial court's initial denial of Paramount's motion to dismiss and the hearing the trial court set for hearing the Bartnicks' summary judgment

---

12. *See Svendsen v. Stock*, 143 Wash.2d 546, 23 P.3d 455 (2001) (broker had knowledge of flooding problem on the subject property because he had represented the purchaser of the uphill property which drainage problem caused the flooding; his knowledge was independent of broker's role in filling out seller's disclosure form); *Bloor v. Fritz*, 143 Wash.App. 718, 180 P.3d 805 (2008) real estate agent knew of the history of illegal drug manufacturing at the property from his contacts with a newspaper reporter, narcotics task force and law enforcement; agent's failure to disclose actual knowledge of said history violated his statutory duty to disclose.

13. All three entries to the appearance docket for the October 31, 2014 hearing state "MSJ granted

as to both remaining defendants," suggesting the trial court may have believed Paramount had also moved for summary judgment. There is no hearing transcript to confirm the correctness of the entry, however the subsequently filed order on appeal grants Paramount's motion to dismiss. "Recitals in a journal entry of judgment are taken as true and correct and are prima facie proof of the facts stated therein where not impeached or contradicted by the record." *Husband v. Husband*, 2010 OK CIV APP 42, ¶ 21, 233 P.3d 383, 387 (citing *Haskett v. Turner*, 1955 OK 329, 290 P.2d 133 (Syl. 1)). Nothing in the accelerated record impeaches or contradicts the recitations in the order of appeal, and we *must* review the court's ruling as a motion to dismiss.

motion. There is no transcript of the hearing included in the accelerated record from which this Court could determine if Buyer objected or raised this error to the trial court. However, to the extent this issue appears to relate to an "alleged deprivation of due process of law" based on lack of notice, it is an exception to the general rule requiring errors to be raised to the trial court and such allegation may be reviewed "despite a failure to preserve error." *Patterson v. Beall*, 2000 OK 92, ¶ 1, 19 P.3d 839, 841.

¶ 37 "'Notice by mail or other means as certain to ensure actual notice is a *minimum constitutional precondition*' to the valid exercise of *in personam* jurisdiction at every critical stage of litigation." (Italics in original.) *Heiman v. Atlantic Richfield Co.*, 1991 OK 22, ¶ 8, 807 P.2d 257, 260. "The court setting for a ruling *dispositive* of an action constitutes a critical stage of litigation." (Emphasis added.) *Id.*, ¶ 10. "Advance personal notice of such setting is one's constitutional due." *Id.*

¶ 38 The appearance docket included in the accelerated record indicates the trial court set a hearing for the Bartnicks' *motion for summary judgment* from which we assume notice was provided to all parties, considering the appealed order's recitation that each party appeared "through counsel" at the October 31, 2014 hearing. However, notice of a ruling that may dispose of or terminate Buyer's claim against the Seller is not advance personal notice of the trial court's reconsideration of Paramount's previously denied 2012(B)(6) motion to dismiss, especially at this stage of the case where discovery has since occurred and Buyer moved for partial summary judgment on Paramount's liability for one of the claims asserted in the petition with attached evidentiary materials. There is no indication in the accelerated record or appearance docket that a) Paramount reasserted its dismissal motion or requested it be treated as a motion for summary judgment or 2) whether the trial court considered any of the evidentiary material when reconsidering the "dismissal" motion.

¶ 39 Further, unlike granting a motion for summary judgment, the trial court's granting of a motion to dismiss may

or may not be *dispositive* of a plaintiff's claim against a defendant. A trial court has a mandatory duty pursuant to 12 O.S. 2011 2012(G) to grant leave to amend when a defect in pleading may be remedied. See *Fanning v. Brown*, 2004 OK 7, 23, 85 P.3d 841. "In order for a trial court to dismiss a claim for failure to state a cause of action without giving the plaintiff the opportunity to amend, it must appear that the claim does not exist rather than the claim has been defectively stated." *Id.* If the trial court concludes a claim does not exist, its order must "contain a statement that no amendment of the petition could cure the defects in [Plaintiff's] petition." *Id.*, ¶ 24; *see also Pellebon v. State ex rel. Board of Regents*, 2015 OK CIV APP 70, ¶ 14, 358 P.3d 288.

¶ 40 The order on appeal neither allows for amendment nor contains a statement indicating amendment would not cure the defects, and thus fails to comply with 2012(G). This error together with the lack of notice to Buyer requires reversal. However, the trial court's granting of Paramount's dismissal motion simultaneously with the Bartnicks' summary judgment motion implies its decision that no cause of action exists for Buyer's claim against Paramount under the Disclosure Act for failure to disclose known defects or professional negligence. Because said ruling would be inconsistent with this Court's affirmance of the trial court's denial of Buyer's motion for partial summary judgment, we must address Buyer's allegation of error regarding the dismissal order to avoid a repeat of the same ruling upon remand.

¶ 41 Buyer contends Paramount's dismissal motion "applied only to the cause of action for failure to disclose known defects under the [Disclosure Act]" and "was insufficient for dismissal of any cause of action because it relied on mere allegations in direct contradiction of the allegations of the Petition." The latter contention implies the trial court failed to apply the applicable standard for a motion to dismiss—"take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them." In Oklahoma, a petition "must not be dismissed for failure to state a

legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." *Indiana National Bank v. State of Oklahoma ex rel. Dept. of Human Services*, 1994 OK 98, ¶ 3, 880 P.2d 371, 375.

¶ 42 The first part of Buyer's allegation of error contends Paramount's dismissal argument did not address his cause of action for professional negligence, which implies the trial court's granting of the motion to dismiss leaves that theory of liability still at issue. We disagree with Buyer's interpretation of Paramount's motion, as explained under our analysis of Buyer's motion for partial summary judgment and the foregoing analysis of Paramount's 2012(B)(6) motion to dismiss.

¶ 43 Taking as true all four of Buyer's allegations of professional negligence against Paramount, we conclude the first allegation, *i.e.*, "failing to disclose all documents and information necessary to [Buyer]," as this Court previously held, addresses the conduct of a real estate licensee that is subject to the Disclosure Act. This Act is "the exclusive vehicle for recovery where misinformation is communicated in the sale of residential property." *White v. Lim*, 2009 OK 79, ¶ 17, 224 P.3d 679, 685. The Disclosure Act "applies to, regulates and determines rights, duties, obligations, and remedies *at common law or otherwise* of the seller, real estate licensee, and *purchaser with respect to disclosure of defects in the property* and *supplants and abrogates all common law liability*, rights, duties, obligations and remedies therefore." 60 O.S.2011 837(F). Thus, Buyer's first negligence allegation must be determined on remand as part of his action against Paramount for alleged violations of its duty to disclose known defects to him.

¶ 44 We reach the same conclusion for Buyer's remaining negligence allegations against Paramount, which we note for the record, were not specifically addressed in Buyer's motion for partial summary judgment. Each allegation involves a purchaser and a real estate licensee, here Buyer and Paramount, to which the Disclosure Act exclusively "applies, regulates and determines" their "rights, duties, obligations, and remedies at common law or otherwise ... *with respect to disclosure of defects in the property.*"

## CONCLUSION

¶ 45 The trial court appealed from order on summary judgement in favor of the Bartnicks and the dismissal motion ruling dismissing the claims against Paramount are both **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

JOPLIN, J., concurs, and BELL, P.J., dissents.